[No. 9695–1–II.   Division Two.   June 30, 1987.]

FRANK OLIVO, JR., *Respondent,* v. ROY W. RASMUSSEN, ET AL, *Appellants.*

---

*Paul E. Sinnitt, Peggy D. Fraychineaud,* and *Sinnitt & Sinnitt, Inc., P.S.,* for appellants.

*Jay B. Roof* and *Roof, Tolman & Kirk,* for respondent.

ALEXANDER, J.—Roy and Tordis Rasmussen appeal the trial court's grant, pursuant to RCW 8.24, of a private way of necessity over their property to Frank Olivo. We hold that the trial court did not err in granting the way of necessity, and affirm.

Olivo sought, in Kitsap County Superior Court, to condemn a private way of necessity over his neighbors', the Rasmussens, land. After a bench trial, the trial court granted Olivo's petition and entered findings of facts and conclusions of law. The unchallenged findings[1] may be summarized as follows:

In 1979, the State of Washington announced its intent to acquire Olivo's property by eminent domain proceedings in order to carry out improvements to State Route 3 near Poulsbo. Olivo entered into negotiations with the State to

---

[1]The Rasmussens assign error generally to the trial court's findings, conclusions and judgment. In doing so, they have not complied with RAP 10.3(g), which requires a separate assignment of error for each contested finding. In light of the deficiency, the trial court's findings become the established facts of the case. *In re Santore,* 28 Wn. App. 319, 323, 623 P.2d 702 (1981).

resolve the matter without the necessity of trial. The State offered Olivo the choice of giving up his entire property for a sum of $72,500 or giving up all but one small landlocked portion of his property in exchange for $70,500. The State's agent told Olivo that he would not be able to obtain a right of way over the condemned portion of the property if he chose to keep the landlocked portion of property and that the State would not assist Olivo in securing alternative access to his property. Faced with that offer and the spectre of litigation, Olivo opted to keep the landlocked portion of his land, together with $70,500, rather than give up his entire property.

The trial court found that Olivo's land became landlocked as a result of the State's "condemnation" of the property. The trial court further found that the Rasmussens' land provided Olivo the only practical source of ingress and egress and that such ingress and egress was necessary for the beneficial use and enjoyment of Olivo's property. The court, therefore, granted the way of necessity for Olivo.

The sole issue before this court is whether the trial court erred in concluding that Olivo should be granted a private way of necessity across the Rasmussens' property. The Rasmussens contend that Olivo should not be allowed to obtain a private way of necessity across their property because, according to them, Olivo voluntarily negotiated a deal with the State that left his parcel landlocked. We disagree.

RCW 8.24.010 provides in part:

> An owner, . . . of land which is so situate with respect to the land of another that it is necessary for its proper use and enjoyment to have and maintain a private way of necessity . . . may condemn and take lands of such other sufficient in area for the construction and maintenance of such private way of necessity, . . .

Because the statute permits a landowner to take property from another individual without any showing of public necessity, it must be strictly construed. *Beeson v. Phillips,*

41 Wn. App. 183, 186, 702 P.2d 1244 (1985).

▉ However, the public policy behind the statute is to prevent landlocked property from being rendered useless. *Brown v. McAnally,* 97 Wn.2d 360, 367, 644 P.2d 1153 (1982). The necessity required for a private way of necessity is not absolute; the party seeking the private way must show only that it is reasonably necessary under the particular facts of the case. *Brown,* 97 Wn.2d at 367.

The Rasmussens argue that reasonable necessity does not exist here because Olivo could have sold his entire parcel to the State for $2,000 more than he got for the portion he conveyed. In effect, the Rasmussens contend, Olivo created his own situation and should not be permitted to remedy the situation at the Rasmussens' expense.

No Washington authority is directly on point, and both parties rely on cases from the state of Louisiana. The Rasmussens cite *English Realty Co. v. Meyer,* 228 La. 423, 82 So. 2d 698 (1955) in support of their position. In *English Realty,* the party seeking a private way of necessity voluntarily sold several portions of his property, leaving himself landlocked. The landlocked party in *English Realty* had not been faced with the loss of his property through condemnation proceedings. The Louisiana court held that because the plaintiff had rendered himself landlocked voluntarily, he was not entitled to the remedy of private condemnation. However, *English Realty* was limited in *Rockholt v. Keaty,* 256 La. 629, 237 So. 2d 663 (1970), wherein the court stated that the holding in *English Realty* does not extend beyond its particular facts.[2]

The most recent Louisiana case dealing with this issue is also the most similar to the one before us. In *Lafayette Airport Comm'n v. Roy,* 265 So. 2d 459 (La. Ct. App. 1972), a landowner's property became landlocked as a result of a settlement with a public entity, a local airport authority.

___

[2]In *Rockholt,* the Louisiana court held that a private right of way was properly obtainable, but denied the party's petition because shorter routes over other property were available.

The settlement was made in contemplation of condemnation proceedings. The court there held that the landowner was allowed to obtain a private way of necessity over a neighbor's property even though he "voluntarily" entered into the settlement. The court stated that the landowner was "not to be punished for [its] cooperation" with the condemning authority. *Lafayette*, 265 So. 2d at 465.

We find the reasoning of *Lafayette* most compelling. The unchallenged findings in the case before us describe a situation where Olivo was faced with the distinct possibility of either losing his entire property in a condemnation action, or being forced into a landlocked situation. Olivo should not be punished for choosing what he believed was the "lesser of two evils" and reaching a settlement that left him landlocked, rather than await condemnation proceedings that very likely would have left him without any of his land. In light of the public policy against rendering land useless, we believe that Olivo was properly granted a private way of necessity across the Rasmussens' property.

We affirm.

REED, C.J., concurs.
WORSWICK, J., concurs in the result.

Reconsideration denied August 24, 1987.