[No. 48718-3-I. Division One. March 3, 2003.]

THE STATE OF WASHINGTON, *Respondent*, v. MICHAEL ROGGENKAMP, *Appellant*.

*Mark V. Watanabe*; and *Richard A. Hansen* (of *Allen, Hansen & Maybrown, P.S.*), for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Stephen P. Hobbs, Deputy*, for respondent.

SCHINDLER, J. — Michael Roggenkamp was convicted of two counts of vehicular assault and one count of vehicular homicide in juvenile court. He argues that his conviction must be reversed because the trial court used the incorrect definition of "reckless" for the vehicular assault and vehicular homicide statutes and because the actions of the other driver were the superseding cause of the accident. He also argues that the trial court failed to enter findings on ultimate facts as required by JuCR 7.11(d). Finding no error, we affirm.

## FACTS

The motor vehicle accident occurred about an hour before dusk on May 28, 2000, at the intersection of 424th Street and 236th Avenue SE, near Enumclaw. The roadway was wet, but it was not raining. At the time of the accident, Roggenkamp was 16 years old and was driving a Chevrolet Blazer south on 236th Avenue, a two-lane residential country road lined with mailboxes and driveways with a posted speed limit of 35 miles an hour. There is a dashed yellow line down the middle of the road. Roggenkamp had one passenger, Tyler Vorpahl, in his Blazer. Roggenkamp's friend, Kaelen Shay, was driving a Nissan behind Roggenkamp and also had one passenger, Mathew Craighead, riding with him. There is no dispute that neither the drivers nor their passengers had consumed any alcohol or drugs prior to the accident on May 28.

The two drivers were headed to the home of their friend, Josh Wiebenga. Both were exceeding the speed limit as they drove down 236th Avenue. Shay pulled into the left lane to pass Roggenkamp in order to show off his new horn. Shay pulled back into the right lane ahead of Roggenkamp, even though he did not know the way to Wiebenga's house.

As Shay's and Roggenkamp's vehicles were traveling along 236th Avenue and approaching the intersection with 424th Street, three vehicles driven by Vonrahe Chilcoate, JoAnn Carpenter, and Robert Rush were traveling along 424th Street and approaching the intersection with 236th Avenue. The first of the three vehicles was a Dodge Caravan driven by Chilcoate with two children in the back. The second vehicle was a Honda Civic driven by Carpenter with her 16-year-old son Michael and 11-year-old Andrew Strand as passengers. The third vehicle was a Ford Expedition driven by Rush with his two sons in the back.

The occupants of the three vehicles had left a barbeque at the home of Debbie Strand and were on their way to a movie. Carpenter had arrived at the barbeque between 4:30 and 5:00 P.M. and had one beer before dinner, between 5:00 or 5:30 P.M. She ate dinner between 6:00 and 6:30 P.M. and had one or two more beers afterwards.

Chilcoate, the driver of the first of the three vehicles to reach the intersection of 424th Street and 236th Avenue, stopped at the intersection and looked to her right down 236th Street. She saw a single vehicle approaching, which was Shay's Nissan. When she reached the intersection, she did not see Roggenkamp's Blazer because it was behind Shay's Nissan. When Chilcoate first saw Shay's vehicle, it was 754 to 954 feet away from the intersection. Chilcoate pulled out from the intersection and onto 236th Avenue, traveling in the same direction as Shay and Roggenkamp. While executing her left turn onto 236th Avenue, Chilcoate looked out the right passenger window and realized that Shay's Nissan was approaching much more quickly than she had initially thought.

After Chilcoate made the turn onto 236th Avenue, Roggenkamp decided to pass Shay to get in front of him because Shay did not know the way to Wiebenga's house. Roggenkamp pulled into the left lane to pass. At this point, Shay was traveling approximately 50 miles an hour, and Roggenkamp was traveling over 70 miles an hour. Chilcoate testified that after she completed the turn, she looked in her rear-view mirror and saw Roggenkamp pull into the left lane from behind Shay. Chilcoate saw that both vehicles were approaching very rapidly and, concerned that she might be struck, she immediately pulled off the road onto the right shoulder of 236th Avenue.

According to Roggenkamp, when he saw Chilcoate's minivan pull out onto 236th Avenue, he immediately applied his brakes. The brakes locked and Roggenkamp went into a skid. JoAnn Carpenter, driving the car behind Chilcoate's, stopped at the intersection of 236th Avenue and 424th Street and followed Chilcoate onto 236th Avenue. Robert Rush, who was in the vehicle directly behind Carpenter's, testified that he distinctly remembered Carpenter stopping at the stop sign before she pulled into the intersection.

Roggenkamp was unable to stop his vehicle before it hit Carpenter's. Rush testified that after Carpenter began to turn onto 236th Avenue and was about in the middle of the intersection, he saw a flash in front of him and then Roggenkamp's car hit Carpenter's. Roggenkamp's skid mark to the point of impact with Carpenter's car was 205 feet long. Carpenter's son, Michael, who was in the front passenger seat, was killed instantly. Carpenter and Andrew Strand, the other passenger, sustained serious injuries.[1] Roggenkamp's Blazer left an additional 50 feet of skid marks after impact, during which the Blazer pushed Carpenter's car broadside down the road. Carpenter's car spun around and rolled down the road and off to the shoulder. It came to rest 208 feet from the point of impact.

---

[1] Carpenter suffered a lacerated pelvis, lacerated spleen, fractured ribs, and fractured vertebrae. She still has difficulty walking.

After the collision, Shay brought his Nissan to a stop behind Chilcoate's parked car on the right shoulder of the road.

It was later determined that at the time of the accident, Carpenter's blood alcohol concentration was a minimum of 0.13.

Roggenkamp was charged with one count of vehicular homicide and two counts of vehicular assault. After a bench trial in juvenile court, Roggenkamp was found guilty on all three counts. The court entered findings of fact and conclusions of law, the relevant portions of which will be discussed below. The court sentenced Roggenkamp to 15 to 36 weeks on the vehicular homicide count and 150 hours of community service on the vehicular assault counts.

## DISCUSSION

### RCW 46.61.520(1)(b) and RCW 46.61.522(1)(a)

Roggenkamp was charged with one count of vehicular homicide under RCW 46.61.520 and two counts of vehicular assault under RCW 46.61.522. RCW 46.61.520, the vehicular homicide statute, provides:

(1) When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person, the driver is guilty of vehicular homicide if the driver was operating a motor vehicle:

(a) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502; or

(b) In a reckless manner; or

(c) With disregard for the safety of others.

(2) Vehicular homicide is a class A felony punishable under chapter 9A.20 RCW, except that, for a conviction under subsection (1)(a) of this section, an additional two years shall be added to the sentence for each prior offense as defined in RCW 46.61.5055.[2]

---

[2] RCW 46.61.520.

RCW 46.61.522, the vehicular assault statute, provides:

(1) A person is guilty of vehicular assault if he or she operates or drives any vehicle:

(a) In a reckless manner and causes substantial bodily harm to another; or

(b) While under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, and causes substantial bodily harm to another; or

(c) With disregard for the safety of others and causes substantial bodily harm to another.

(2) Vehicular assault is a class B felony punishable under chapter 9A.20 RCW.

(3) As used in this section, "substantial bodily harm" has the same meaning as in RCW 9A.04.110.[3]

■ There are three alternative means of committing both vehicular homicide[4] and vehicular assault.[5] The three alternatives are the same under both statutes; accordingly "[t]he case law construing these alternatives in the context of vehicular homicide is equally applicable to vehicular assault."[6]

■ Roggenkamp was charged under the reckless manner alternative of the vehicular homicide and vehicular assault statutes.[7] The trial court concluded that "reckless" for purposes of these statutes means operating a motor vehicle in a rash and heedless manner, indifferent to the consequences.[8] Roggenkamp argues that the trial court

---

[3] RCW 46.61.522.

[4] RCW 46.61.520(1).

[5] RCW 46.61.522(1).

[6] 13B SETH A. FINE & DOUGLAS J. ENDE, WASHINGTON PRACTICE: CRIMINAL LAW § 2705 (2d ed. Supp. 2003).

[7] RCW 46.61.520(1)(a) and RCW 46.61.522(1)(a).

[8] The court concluded:

Recklessness, as defined in WPIC [Washinton Pattern Jury Instructions: Criminal] 90.05, focuses on the act itself rather than the *mens rea*. Reckless driving as defined in the relevant statute is shaded towards the negligent driving standard as opposed to the non-negligent or non-vehicular homicide or

applied the wrong definition of "reckless" for purposes of both of these statutes because the court's definition eliminated a subjective mens rea requirement. He argues that the trial court should have defined "reckless" as wanton and willful disregard for the safety of persons or others.

The definition of "reckless" Roggenkamp argues should apply to the vehicular homicide and vehicular assault statutes comes from the reckless driving statute, RCW 46.61.500, which provides:

> (1) Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving. Violation of the provisions of this section is a gross misdemeanor punishable by imprisonment of not more than one year and by a fine of not more than five thousand dollars.
>
> (2) The license or permit to drive or any nonresident privilege of any person convicted of reckless driving shall be suspended by the department for not less than thirty days.[9]

We disagree with Roggenkamp that the definition from the reckless driving statute should be used to define "reckless" under the vehicular homicide and vehicular assault statutes. The language of the vehicular homicide and vehicular assault statutes, the history of legislative enactments leading to the present vehicular homicide statute, and the judicial construction of these statutes establish that willful or wanton disregard for the safety of persons or property, an element of reckless driving, is not an element of vehicular homicide or vehicular assault.

---

vehicular assault definition of recklessness, which requires proof of willfulness or wanton conduct. However, ordinary negligence in operating a motor vehicle does not render a person guilty of vehicular homicide. Recklessness under these standards is easier to prove than the willful or wanton standard, which incorporates a greater focus on the mental state of the person. It requires that the court find beyond a reasonable doubt, and the court does so find, that Rog[g]enkamp operated a motor vehicle in a rash and heedless manner, indifferent to the consequences.

Conclusion of Law 1, Clerk's Papers (CP) at 126-27. The court also concluded: "Michael Roggenkamp drove his vehicle in a reckless manner." Conclusion of Law 2, CP at 127.

[9] RCW 46.61.500.

As originally enacted in 1937, the vehicular homicide statute was known as the negligent homicide statute. It provided:

> "When the death of a person ensues within one year as a proximate result of injury received by the operation of a vehicle by any person while under the influence of or affected by intoxicating liquor or narcotic drugs or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle shall be guilty of negligent homicide by means of a motor vehicle."[10]

In *State v. Partridge*, the Supreme Court clarified earlier opinions and held that "operation of a motor vehicle in a reckless manner" as used in the 1937 version of the negligent homicide statute meant " 'the operation of a motor vehicle in a heedless, careless or rash manner or in a manner indifferent to consequences.' "[11]

In *State v. Bowman*,[12] while the court agreed with the definition in *Partridge*, it believed a more precise definition of "reckless" was necessary. The court was concerned that the *Partridge* court's use of "careless" interjected a negligence standard.[13] Thus, the *Bowman* court defined "to operate a motor vehicle in a reckless manner" as "driving in a rash and heedless manner, indifferent to the consequences."[14]

The negligent homicide statute was recodified in 1961 and 1965, with no change in language. In 1970, the statute was amended in two ways: the period between injury and death was lengthened from one year to three years, and the provision on driving while under the influence of drugs was

---

[10] Former RCW 46.56.040 (1937) (quoted in *State v. Partridge*, 47 Wn.2d 640, 642, 289 P.2d 702 (1955)).

[11] *State v. Partridge*, 47 Wn.2d 640, 645-46, 289 P.2d 702 (1955) (quoting with approval a jury instruction).

[12] 57 Wn.2d 266, 356 P.2d 999 (1960).

[13] 57 Wn.2d at 271.

[14] *Id.* (emphasis omitted).

expanded to include dangerous drugs.[15] The reckless manner alternative of the statute was not changed.[16] In 1973 and 1975, the statute was again amended, but only with respect to the provision regarding driving under the influence of drugs.[17]

In 1983, the statute was amended and the crime was renamed from negligent homicide to vehicular homicide.[18] Again, the reckless manner alternative remained unchanged. The Supreme Court interpreted the 1983 amended version of the statute to require that the State prove a causal connection between the defendant's intoxication and the death, a judicially-imposed causation requirement.[19]

In 1991, the statute was amended again, but the language of the reckless manner alternative was not changed.[20] In *State v. Rivas*, the Supreme Court interpreted the amended statute as eliminating the requirement that the defendant's intoxication was a proximate cause of the death. The court held that the vehicular homicide statute, as amended by 1991, does not require proof of a causal connection between intoxication and death; rather, the only causal connection the State must prove is the connection between the defendant's act of driving and the accident.[21]

---

[15] Laws of 1970, 1st ex. sess., ch. 49, § 5.

[16] When amending a statute, the legislature is presumed to know how the courts have construed and applied the statute. *In re Pers. Restraint of Quackenbush*, 142 Wn.2d 928, 936, 16 P.3d 638 (2001).

[17] Laws of 1973, 2d ex. sess., ch. 38, § 2 (adding a reference to "controlled drugs"); Laws of 1975, 1st ex. sess., ch. 287, § 3 (expanding the provision to include all drugs, whether controlled or not).

[18] Laws of 1983, ch. 164, §§ 1, 2.

[19] *State v. MacMaster*, 113 Wn.2d 226, 231, 778 P.2d 1037 (1989) (noting that the court had engrafted the requirement that impairment due to alcohol be a proximate cause of the fatality onto the statute in order to avoid a strict liability result).

[20] Laws of 1991, ch. 348 § 1.

[21] *State v. Rivas*, 126 Wn.2d 443, 451-53, 896 P.2d 57 (1995).

The language of the reckless manner alternative of the vehicular assault statute, like the language of the reckless manner alternative of the vehicular homicide statute, has not changed since the statute's enactment.[22]

With a few exceptions, discussed below, in opinions subsequent to *Partridge* and *Bowman*, courts have held that "reckless" as used in the vehicular homicide and vehicular assault statutes means " 'a rash or heedless manner, . . . indifferent to the consequences.' "[23] While the Washington Pattern Jury Instructions: Criminal (WPICs) are not binding authority,[24] their definitions are in accord with the *Partidge/Bowman* line of cases and with what we view is the correct definition of "reckless" for these statutes. The WPICs also define "operating a motor vehicle in a reckless manner" as "driving in a rash or heedless manner, indifferent to the consequences."[25]

In arguing that "reckless" as used in the vehicular homicide and vehicular assault statutes means "willful or wanton disregard for the safety of persons or property," the definition from the reckless driving statute, Roggenkamp cites three opinions in which the courts departed from the definition consistently used beginning with *Partridge*: *State v. McAllister*,[26] *State v. Miller*,[27] and *State v. Hursh*.[28] In our view, the courts in these three cases erred by citing the definition of "reckless" from the reckless driving statute.

In *State v. McAllister*, the defendant appealed his vehicular homicide conviction. He had been charged under all

---

[22] The vehicular assault statute was amended in 2001 and the "disregard for the safety of others" alternative was added. The amendment also changed "serious bodily injury" to "substantial bodily harm." Laws of 2001, ch. 300, § 1.

[23] *See, e.g., Medrano v. Schwendeman*, 66 Wn. App. 607, 609-10, 836 P.2d 833 (1992); *State v. Thompson*, 90 Wn. App. 41, 48, 950 P.2d 977 (1998).

[24] *Rivas*, 126 Wn.2d at 452.

[25] WPIC 90.05 (vehicular homicide); WPIC 91.03 (vehicular assault).

[26] 60 Wn. App. 654, 806 P.2d 772 (1991).

[27] 60 Wn. App. 767, 807 P.2d 893 (1991).

[28] 77 Wn. App. 242, 890 P.2d 1066 (1995).

three alternatives of the 1983 version of the statute and argued that the evidence was insufficient to support his conviction. Because the State charged the defendant under all three alternative means of committing vehicular homicide, it had to produce substantial evidence of each alternative means. The court stated: "Unless there is sufficient evidence as to each means by which the defendant was alleged to have committed the crime, the verdict must be set aside."[29] The court held that the State failed to produce sufficient evidence to sustain the defendant's conviction under the first alternative means of committing vehicular homicide (driving while intoxicated) because the State failed to prove beyond a reasonable doubt that the defendant's negligence in driving while intoxicated was the proximate cause of the victim's death. The court only briefly mentioned the other two alternative means of committing the offense (reckless manner and disregard for the safety of others) and concluded that the State's only evidence in support of these two alternatives, a tire mark, was insufficient.

As it began its analysis of the sufficiency of the evidence, the court in *McAllister* set out what, in its view, the State must prove to support a conviction under each of the three alternatives. With regard to the reckless manner alternative, the court set forth two different definitions of "reckless driving":

> What must be shown to support a conviction under the second alternative as the proximate cause is "reckless driving", which has been defined as driving "in willful or wanton disregard for the safety of persons or property . . . ". RCW 46.61.500. 11 Wash. Prac., *WPIC* 90.05 (Supp. 1986) defines it as "driving in a rash or heedless manner, indifferent to the consequences."[30]

The court did not acknowledge the differences between these two definitions and did not indicate which definition should be used. Nor did the court acknowledge that the

---

[29] *McAllister*, 60 Wn. App. at 658.

[30] *Id.* at 659.

"willful or wanton disregard for the safety of persons or property" definition was, by the court's own citation to RCW 46.61.500, from the reckless driving statute, not the vehicular homicide statute. The court's second definition, taken from WPIC 90.05, is the definition the courts, until *McAllister*, consistently identified as the definition of "reckless" under the vehicular homicide statute.

The court in *State v. Miller*[31] was presented with very similar facts and issues as in *McAllister*. The defendant appealed his conviction of vehicular homicide and was charged under all three alternative means of committing the offense. The court adopted the identical language from *McAllister* regarding what must be shown to establish each alternative means. Again, the court provided no analysis of why it combined definitions of "reckless" from two different statutes or which of the two definitions it used, and its discussion of recklessness was dicta and not outcome determinative. The court affirmed the defendant's conviction under the driving while intoxicated alternative. The court mentioned recklessness only to the extent to state that, in its opinion, evidence that the defendant was driving on the wrong side of the road with only one headlight established reckless manner.[32]

Finally, in *State v. Hursh*,[33] the defendant was charged under the reckless manner and intoxication alternatives of committing vehicular assault. On appeal, Hursh challenged the sufficiency of the evidence to support his conviction. The court cited both *McAllister* and the reckless driving statute, RCW 46.61.500, in support of its statement that "reckless" under the vehicular assault statute means " 'in willful or

---

[31] 60 Wn. App. 767.

[32] *McAllister* and *Miller*, authored by the same judge, are opinions from Division Three of this court. Notably, in another case from Division Three, issued seven years later, the court defined "reckless" by using the definition from the *Partridge / Bowman* line of cases, the definition we hold is the correct one. *See State v. Thompson*, 90 Wn. App. 41, 48, 950 P.2d 977 (1998) ("Courts have held that the 'reckless manner' element of vehicular assault means to drive in a rash or heedless manner, with indifference to the consequences.").

[33] 77 Wn. App. 242.

wanton disregard for the safety of persons or property.' "[34] Beyond these citations, the court gave no explanation of why it chose the definition from the reckless driving statute and no analysis of why that definition should apply to vehicular assault.

We believe that use of a definition from a different statute to define "reckless" under the vehicular assault statute is incorrect, particularly in light of the established and contrary judicial construction of "reckless."[35] We decline to follow *McAllister, Miller,* and *Hursh.* Rather, we agree with the *Partridge / Bowman* line of cases holding that "reckless" under the vehicular assault and vehicular homicide statutes means driving in a rash or heedless manner, indifferent to the consequences.[36] The trial court in the present case used the correct definition of the term.[37]

*Superseding Cause*

■ Roggenkamp argues that the evidence is insufficient to convict him of vehicular assault and vehicular homicide because JoAnn Carpenter's actions (driving with a 0.13 blood alcohol concentration and pulling out in front of Roggenkamp) were the superseding cause of the accident. The inquiry with respect to sufficiency of the evidence to support a criminal conviction is whether, viewing the evidence in the light most favorable to the State, any rational

---

[34] *Id.* at 248 (quoting RCW 46.61.500).

[35] *Hursh,* a Division One case, is not consistent with other Division One cases that have addressed this issue. *See, e.g., Medrano,* 66 Wn. App. at 609-10.

[36] Roggenkamp also cites *State v. Lopez,* 93 Wn. App. 619, 970 P.2d 765 (1999) and *State v. Vreen,* 99 Wn. App. 662, 994 P.2d 905 (2000), *aff'd,* 143 Wn.2d 923 (2001). Although the defendants in both cases were charged under both the reckless manner alternative and the disregard for the safety of others alternative of the vehicular homicide statute, the courts' discussion of the necessity of evidence of the defendant's conscious disregard of the danger to others, the discussion on which Roggenkamp relies, is in the context of the courts' analysis of the "disregard for the safety of others" alternative.

[37] Roggenkamp does not argue that the evidence was insufficient under the "rash and heedless" definition of reckless manner.

trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[38]

Roggenkamp argues that the evidence is insufficient to establish that his actions were the proximate cause of the injuries and death.[39] He assigns error to the trial court's conclusion that JoAnn Carpenter's actions were not a superseding intervening cause of the accident.[40] Conclusions of law are reviewed de novo.[41] Roggenkamp does not assign error to any specific finding of fact. Rather, he "assigns error generally" to the court's written findings of fact and conclusions of law and to the trial court's oral decision.[42] RAP 10.3(g) requires a separate assignment of error for each finding of fact a party contends was improperly made and a reference to the finding by number. "A general assignment of error to the 'findings of fact,' . . . is insufficient under the rule."[43] Because the assignments of error to the court's findings of fact do not comply with RAP 10.3(g), the trial court's findings become the established facts of the case.[44] The appellate court's function is then

---

[38] *State v. Lovelace*, 77 Wn. App. 916, 919, 895 P.2d 10 (1995).

[39] The vehicular homicide statute, RCW 46.61.520, specifically requires that the victim's death ensues "as a proximate result of injury proximately caused by the driving of any vehicle by any person." The current version of the vehicular assault statute, RCW 46.61.522, does not specifically use the term "proximate cause," but rather states that a person is guilty of vehicular assault if he or she drives a vehicle "[i]n a reckless manner and causes substantial bodily harm to another." RCW 46.61.522(1)(a).

[40] Conclusion of law 3, CP at 127: "Michael Roggenkamp's driving was a proximate cause of the accident, which caused the death of Michael Carpenter and serious bodily injury to Jo[A]nn Carpenter and Andrew Strand. Therefore, it is not necessary to find whether Jo[A]nn Carpenter's acts were also a proximate cause of the accident. Jo[A]nn Carpenter's actions were not a superseding intervening cause of the accident."

[41] *State v. Reynolds*, 144 Wn.2d 282, 287, 27 P.3d 200 (2001).

[42] Br. of Appellant at 2.

[43] 3 LEWIS H. ORLAND & KARL B. TEGLAND, WASHINGTON PRACTICE at 254 (5th ed. 1998); *see also Olivo v. Rasmussen*, 48 Wn. App. 318, 319 n.1, 738 P.2d 333 (1987) (assigning error generally to the trial court's findings of fact does not constitute compliance with RAP 10.3(g)).

[44] *Olivo*, 48 Wn. App. at 319 n.1; *In re Habeus Corpus of Santore*, 28 Wn. App. 319, 323, 623 P.2d 702 (1981).

limited to determining whether the findings of fact support the court's conclusions of law and judgment.[45]

 With respect to Carpenter's intoxication, the trial court found:

> At the time of the accident, Jo[A]nn Carpenter's blood alcohol content was significantly high. Jo[A]nn Carpenter had an absolute minimum .13 blood alcohol concentration at the time of driving. This blood alcohol content is a very significant level to have in your system at the time of driving a motor vehicle. Although it is very likely that Jo[A]nn Carpenter's judgment and/or reaction time was affected by her alcohol consumption, the court does not make a finding that she was so affected. There was no testimony that Jo[A]nn Carpenter appeared intoxicated. The court makes no finding as to whether Jo[A]nn knew she was intoxicated.[46]

With respect to Carpenter's pulling out in front of Roggenkamp's oncoming vehicle, the court found:

> It should have been clear to Jo[A]nn Carpenter, at a reasonable distance behind the stop sign on 424th Street, or at least within a few feet behind the sign, that Kaelen Shay and Michael Roggenkamp were proceeding towards the intersection. Anyone safely proceeding behind Vonra[h]e Chilcoate's vehicle and either stopping at the stop sign, then proceeding to the stop line, or stopping at the stop line alone and looking in a reasonable manner, would have seen Kaelen Shay and Michael Roggenkamp's vehicles approaching. Anyone pulling out behind Vonra[h]e Chilcoate would have been able to see Michael Roggenkamp if that person pulling out were driving carefully and looked to get a clear view of oncoming traffic.
>
> After Vonra[h]e Chilcoate's initial observation of Kaelen Shay's vehicle and the almost immediate attempt to pass by Michael Roggenkamp, it no longer appeared safe for any vehicle behind her using reasonable caution and checking before pulling out to actually proceed into the intersection. Jo[A]nn Carpenter should have seen Michael Roggenkamp's

---

[45] *Santore*, 28 Wn. App. at 323; *In re Welfare of Bennett*, 24 Wn. App. 398, 400-01, 600 P.2d 1308 (1979).

[46] Finding of fact 11, CP at 124-25.

vehicle before pulling out from the stop sign, and she failed for whatever reason to see either Michael Roggenkamp or Kaelen Shay.[47]

Contributory negligence is not a defense to negligent homicide.[48] But, a defendant:

> may avoid responsibility for a death resulting from the defendant's driving if the death was caused by a superseding intervening event. *See State v. Rivas*, 126 Wn.2d 443, 453, 896 P.2d 57 (1995). To escape liability, the defendant must show that the deceased's contributory negligence was a supervening cause without which the defendant's contributory negligence would not have caused the accident.[49]

An intervening cause is a force that operates to produce harm *after* the defendant has committed the act or omission.[50] "A force set in motion at an earlier time is an intervening force if it first operates after the actor has lost control of a situation and the actor neither knew nor should have known of its existence at the time of his negligent conduct."[51]

To be a superseding cause sufficient to relieve a defendant from liability, an intervening act must be one that is not reasonably foreseeable.[52] Factors to consider in determining whether an intervening act is a superseding cause include whether (1) the intervening act created a different type of harm, (2) the intervening act constituted an extraordinary act, and (3) the intervening act operated independently.[53] Thus, when the intervening act is one which the

---

[47] Findings of fact 12, 13, CP at 125-26.

[48] *State v. Judge*, 100 Wn.2d 706, 718, 675 P.2d 219 (1984).

[49] *State v. Souther*, 100 Wn. App. 701, 708-09, 998 P.2d 350 (2000).

[50] *Id.* at 710 (citing *Klein v. Pyrodyne Corp.*, 117 Wn.2d 1, 17 n.7, 810 P.2d 917 (1991)).

[51] RESTATEMENT (SECOND) OF TORTS § 441(1) cmt. a.

[52] *Crowe v. Gaston*, 134 Wn.2d 509, 519, 951 P.2d 1118 (1998); *Micro Enhancement Int'l v. Coopers & Lybrand, L.L.P.*, 110 Wn. App. 412, 431, 40 P.3d 1206 (2002).

[53] *Campbell v. ITE Imperial Corp.*, 107 Wn.2d 807, 812-13, 733 P.2d 969 (1987); *see also Cramer v. Dep't of Highways*, 73 Wn. App. 516, 521, 870 P.2d 999 (1994)

defendant should not have anticipated as reasonably likely to happen, then there is a break in the causal connection between the defendant's negligence and the plaintiff's injury, and the intervening act is the superseding cause of the plaintiff's injury.[54]

Here, the record contains evidence that 236th Avenue is a rural residential country road lined with houses and mailboxes. Even if Roggenkamp had not actually seen Chilcoate's minivan and even if he did not know of the existence of the intersection with 424th Street, the presence of driveways and mailboxes and the posted speed limit of 35 miles per hour should have made it reasonably foreseeable to Roggenkamp that vehicles may be turning onto the road. A vehicle pulling out onto 236th Avenue (whether driven by an intoxicated driver or not) was an occurrence that should have been reasonably foreseeable to Roggenkamp.[55] Carpenter's actions are not, therefore, a superseding cause that became the sole proximate cause of the accident for purposes of Roggenkamp's culpability under the vehicular homicide statute.

As discussed, to be a superseding cause, the intervening act must have occurred after the defendant's act or omission.[56] Roggenkamp argues that the intervening act is Carpenter's driving while intoxicated and pulling out of the intersection and onto 236th Avenue when it was not safe to

---

(A superseding cause exists if the acts of the plaintiff are so highly extraordinary or unexpected that they are considered outside the realm of reasonable foreseeability as a matter of law.). But, where the acts are not so highly extraordinary or unexpected, whether an independent cause is reasonably foreseeable is a question for the trier of fact. *Micro Enhancement*, 110 Wn. App. at 431.

[54] *McAllister*, 60 Wn. App. at 660.

[55] In contrast, in *McAllister*, the defendant, who was driving while intoxicated, had no reason to know or anticipate that the side doors of the van he was driving were not properly closed. Another person had last closed the doors while the defendant was not present, so that any negligence or recklessness by the defendant was superseded by an independent intervening act, and the defendant was therefore not guilty of vehicular homicide arising out of the death of an intoxicated passenger in the van who was not wearing a seat belt and who fell out of the side door when the defendant made a U-turn in a parking lot at 10 to 15 m.p.h.

[56] *Souther*, 100 Wn. App. at 710.

do so after he was in a locked brake skid. Even though, at the time of the collision, Roggenkamp was in a locked-brake skid, his reckless driving was ongoing at the time of Carpenter's act of pulling into the intersection. Roggenkamp drove well in excess of the speed limit in the passing lane and disregarded (or did not anticipate) the reasonable possibility that a vehicle would enter the roadway from the intersection. At most, Carpenter's actions were a concurring cause, not a superseding cause, of the accident.[57] A concurring, as opposed to an intervening, cause does not shield a defendant from vehicular homicide.[58]

The trial court's findings support its conclusions that Roggenkamp's actions were the proximate cause of the accident and that Carpenter's actions were not a superseding cause.

*Burden of Proof of Superseding Cause*

Relying on *State v. McCullum*,[59] Roggenkamp argues that because the defense of superseding cause negates an element of the offense, the trial court erred by not requiring the State to prove the absence of superseding cause beyond a reasonable doubt. The Supreme Court in *State v. Camara* expressed "substantial doubt" about the correctness of the *McCullum* "negates" analysis[60] and concluded "that assignment of the burden of proof on a defense to the defendant is not precluded by the fact that the defense 'negates' an

---

[57] *See Souther*, wherein the victim was exceeding the speed limit and had the turn signal on his motorcycle activated, even though he proceeded straight through an intersection and was struck and killed by the defendant, who was approaching in the opposite direction and turning left. The court stated: "Here, even if the victim was exceeding the speed limit and even if he displayed a turn signal, these actions were in existence prior to Souther's act and cannot be considered *intervening* causes. Although the victim's speed or turn signal may have been *concurring* causes, contributing to death, Souther has pointed us to no authority stating that a concurring cause shields a defendant from responsibility for vehicular homicide." *Souther*, 100 Wn. App. at 710-11.

[58] *Id.*

[59] 98 Wn.2d 484, 656 P.2d 1064 (1983).

[60] *State v. Camara*, 113 Wn.2d 631, 639, 781 P.2d 483 (1989).

element of a crime."[61] Rather, the court in *Camara*, in determining whether the burden of proof of consent in a rape case lies with the State or the defense, looked to legislative intent and held that the burden lies with the defendant.

 Here, neither Roggenkamp nor the State undertakes an analysis of the legislature's intent as to which party should have the burden of proof on the defense of superseding cause. Rather, the State contends that the issue is not relevant to this case because the State assumed the burden of proving beyond a reasonable doubt all the elements of vehicular homicide and vehicular assault. Thus, by proving that Roggenkamp's actions were the proximate cause of the injuries and the death, the State necessarily proved that Roggenkamp's actions were not broken by any new independent cause. We agree with the State. Assuming the burden of proving the absence of a superseding cause is on the State, the State met that burden by proving that Roggenkamp's actions were a proximate cause of the injuries and death.

*Findings on Ultimate Facts*

Roggenkamp argues that the matter must be remanded because the trial court failed to enter findings on the ultimate facts as required by JuCR 7.11(d).[62] "Ultimate facts" are those " 'which are necessary to determine issues in case, as distinguished from evidentiary facts supporting them. The logical conclusions deduced from certain primary

---

[61] *Id.* at 640.

[62] That rule provides:

The court shall enter written findings and conclusions in a case that is appealed. The findings shall state the ultimate facts as to each element of the crime and the evidence upon which the court relied in reaching its decision. The findings and conclusions may be entered after the notice of appeal is filed. The prosecution must submit such findings and conclusions within 21 days after receiving the juvenile's notice of appeal.

JuCR 7.11(d).

evidentiary facts. Final facts required to establish plaintiff's cause of action or defendant's defense.' "[63]

According to the State, two additional hearings were held after the court issued its oral opinion, in order to discuss the written findings and conclusions before they were entered. The State asserts that Roggenkamp failed to address any concerns about the lack of findings on ultimate facts at either of these hearings and did not request transcripts thereof. Although there is no evidence in the record to support the State's assertions, Roggenkamp does not dispute them.

Assuming the State is correct that Roggenkamp did not raise an issue concerning the trial court's failure to make findings on ultimate facts, he is precluded from raising this issue for the first time on appeal.[64] Moreover, a review of the trial court's findings of fact and conclusions of law shows that the trial court did make findings on the ultimate facts as required by JuCR 7.11(d).

We affirm the trial court.

GROSSE and AGID, JJ., concur.

Review granted at 150 Wn.2d 1009 (2003).

---

[63] *State v. Alvarez*, 128 Wn.2d 1, 15 n.15, 904 P.2d 754 (1995) (quoting BLACK'S LAW DICTIONARY 1522 (6th ed. 1990)).

[64] *In re Dependency of O.J.*, 88 Wn. App. 690, 696, 947 P.2d 252 (1997) (a party is not entitled to relief on appeal based on the trial court's failure to make a finding where the party seeking relief failed to raise the issue before the trial court).