# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  53189-5-II |
| Respondent, | |
| v. | |
| MATTHEW STEVEN JOHNSON, | UNPUBLISHED OPINION |
| Appellant. | |

SUTTON, J. — Matthew Steven Johnson appeals from his bench trial conviction for vehicular assault.  He argues that the trial court erred when it denied his motion to dismiss the case for failure to establish the corpus delicti of the vehicular assault charge and that the evidence was insufficient to prove that his actions were the proximate cause of the victim's injuries.  Johnson also raises several issues in a statement of additional grounds for review (SAG).[1]  We hold that (1) the evidence was sufficient to establish corpus delicti, so the trial court did not err when it denied Johnson's motion to dismiss, (2) the evidence was sufficient to establish that Johnson's actions were a proximate cause of the victim's injuries, and (3) Johnson's SAG issues fail.  Accordingly, we affirm.

---

[1] RAP 10.10.

FACTS

I. BACKGROUND

On the evening of October 6, 2017, as the sun was going down, Tyler Newport and his girlfriend Hanna Himley were driving west in the right lane on Highway 12. Suddenly, the red pickup truck immediately in front of them "flashed its brake lights and abruptly changed lanes to the left." Clerk's Papers (CP) at 23. When the red pickup truck changed lanes, Himley and Newport saw a white passenger car "partially blocking the right lane of travel." CP at 23. The front end of the white vehicle "was about halfway into the [right] lane." CP at 23. Newport "slammed on [his] brakes," "laid on the horn," and was able to "stop approximately a foot or a foot and a half away from the white [car]." CP at 23.

Within seconds, a white pickup truck driven by Marilyn Barnes collided with the back of Newport's pickup truck. Barnes was injured in the accident.

When the State Patrol arrived, one of the troopers talked to Johnson. CP at 24 (FF 6). Johnson admitted that he had been driving the white vehicle and stated that he had been backing into his driveway when Newport's truck "came to a stop in front of him" and then the collision occurred. CP at 24.

II. PROCEDURE

The State charged Johnson with the vehicular assault. Johnson waived his right to a jury trial and the case proceeded to a bench trial.

A. TRIAL TESTIMONY AND CORPUS DELICTI OBJECTIONS

The State presented testimony from Himley, Barnes, Washington State Patrol Trooper Matthew Rabe, and Washington State Patrol Sergeant Charles Stewart. Johnson did not present any evidence. Johnson stipulated that Barnes suffered a broken patella in the incident.

1. HIMLEY'S TESTIMONY

Himley testified that she and Newport had been travelling west in the right lane of the highway when the vehicle in front of them braked briefly and then abruptly pulled into the left lane. When the vehicle pulled into the next lane, Himley "saw . . . a white car that was pulled half way into" their lane of travel. Report of Proceedings (RP) (Jan. 25, 2019) at 14. Himley testified that Newport "had to [immediately] slam on the brakes, and [they] missed hitting [the] car by a few feet." RP (Jan. 25, 2019) at 14, 17. "[A] few seconds later, [they] were hit from behind." RP (Jan. 25, 2019) at 14.

Himley further testified that when she and Newport initially saw the white vehicle, the vehicle's front end "was in the lane almost perpendicular to the white shoulder stripe[,] [a]nd the white shoulder stipe was about mid-way between the front and the back of the car." RP (Jan. 25, 2019) at 18. She estimated that "the car was half way of the car length into the lane." RP (Jan. 25, 2019) at 18.

2. BARNES'S TESTIMONY AND FIRST CORPUS DELICTI OBJECTION

Barnes testified that she was driving behind Newport's vehicle in "fairly heavy" traffic when Newport's vehicle suddenly stopped. RP (Jan. 25, 2019) at 27. Before Newport stopped, Barnes had noticed "out of the corner of [her] eye," that there was a vehicle very close to the highway near Johnson's driveway, but she could not "tell if [that vehicle] was moving or if it was

3

backing up or what." RP (Jan. 25, 2019) at 27. She commented that the vehicle "was out there so close to the highway that it was a concern." RP (Jan. 25, 2019) at 27. As she approached the vehicle, she tapped her brakes, quickly glanced in her mirrors, and then hit Tyler's truck.

Barnes did not recall if she had time "to really apply [her] brakes," but she testified that "[i]t was very fast" and that she did not think she could have acted any faster. RP (Jan. 25, 2019) at 29. She stayed in her vehicle until the ambulance crew took her away.

While in her vehicle, Barnes saw a trooper talking to Johnson, who was standing near a gate or fence. Barnes did not hear the entire conversation, but she heard Johnson responding to the officer.

When the State asked Barnes what she heard Johnson say, defense counsel objected. Defense counsel argued that Johnson's statements were inadmissible due to lack of corpus delicti. Specifically, defense counsel argued, "I don't believe any statements of my client's are admissible until they have put on evidence that he has committed a crime, and they haven't done that yet." RP (Jan. 25, 2019) at 32. Noting that this was a bench trial, the trial court responded, "I will hear [Barnes's answer]. If the State fails to establish corpus delicti, the trial is going to be over." RP (Jan. 25, 2019) at 32. Barnes then testified, "I heard him say, well, that's not my fault, that's hers." RP (Jan. 25, 2019) at 32.

### 3. RABE'S TESTIMONY AND ADDITIONAL CORPUS DELICTI OBJECTIONS

Rabe testified that when he arrived at the scene, Johnson "was standing on the shoulder of the road in front of the driveway" and the white vehicle was "facing forward" in the driveway.[2]

---

[2] Rabe also testified that Johnson's father and some other people were present, but Rabe did not remember who these other people were.

4

RP (Jan. 25, 2019) at 44-45. Rabe knew Johnson and knew that this was Johnson's driveway because of prior contact with Johnson at this location. Rabe also testified that Johnson was the white vehicle's registered owner.

When the State asked Rabe what Johnson had said, defense counsel objected on corpus delicti grounds. The trial court told defense counsel that he could move "later to dismiss asserting that the State ha[d] failed to establish the necessary elements of the corpus delicti of this crime," and that the court would not consider Johnson's statements if that motion had merit. RP (Jan. 25, 2019) at 47. The court assured defense counsel that it would consider the corpus delicti objection as a "continuing objection." RP (Jan. 25, 2019) at 47.

Rabe then testified:

> [Johnson] stated that he had pulled on to the shoulder of State Route 12, was backing into his driveway, and he heard brakes screeching, and once he got out of his car, he saw the vehicle in the middle of the road and the truck that was parked on the shoulder.

RP (Jan. 25, 2019) at 47. Rabe testified that the location of Johnson's vehicle was consistent with his description of having backed the vehicle into the driveway.

Rabe further testified that he spoke to Johnson a second time after talking to Newport. This time, Rabe stated that he had talked to Johnson about "the stop that [Rabe] made in 2015." RP (Jan. 25, 2019) at 49. The State then asked Rabe if Johnson had "acknowledge[d] any kind of fault for the collision." RP (Jan. 25, 2019) at 49. Rabe responded that "[Johnson] stated [that] it was [Barnes's] fault." RP (Jan. 25, 2019) at 50.

The State next asked Rabe if he had told Johnson that he was not allowed to back into his driveway the way he did. Rabe responded, "Yes, I did. It had been discussed." RP (Jan. 25, 2019)

at 51. When the State asked Rabe what Johnson's response was, Rabe responded, "He stated how else was he supposed to be able to get into his driveway." RP (Jan. 25, 2019) at 52. Rabe further testified that he believed Johnson had violated RCW 46.61.650(1), which prohibited unsafe backing.[3]

4. STEWART'S TESTIMONY

Stewart testified the he investigated the accident and spoke to both Barnes and Newport. Stewart also testified that when he arrived there was a white passenger vehicle "parked right next to the collision scene" in a driveway on Johnson's property. RP (Jan. 25, 2019) at 56. Stewart also identified Johnson as the defendant. Stewart stated that he knew both Johnson and his father and that Johnson was the white vehicle's registered owner.

B. DEFENSE MOTION TO DISMISS FOR LACK OF CORPUS DELICTI

After the State rested, defense counsel moved to dismiss the case for lack of corpus delicti. Defense counsel argued that there was no evidence that Johnson had been driving the white vehicle other than Johnson's statement to Rabe. Defense counsel also argued that there was no proof any crime was committed, only that a vehicle was partially on the roadway and that this caused "two other vehicles to stop." RP (Jan. 25, 2019) at 62.

The trial court denied the motion to dismiss and admitted Rabe's testimony that Johnson had stated that he was backing up when he heard the sound of the collision.

---

[3] RCW 46.61.605 addresses "Limitations on Backing," and provides: "(1) The driver of a vehicle shall not back the same unless such movement can be made with safety and without interfering with other traffic. (2) The driver of a vehicle shall not back the same upon any shoulder or roadway of any limited access highway."

C. FINDINGS OF FACT AND CONCLUSIONS OF LAW

The trial court issued the following findings of fact and conclusions of law:

FINDINGS OF FACT

1.

On the evening of October 6, 2017, on westbound Highway 12 near milepost 3, near the intersection with Aberdeen Lake Road, a collision occurred between a black Ford F-350 pickup driven by Tyler Newport, and a white Ford Ranger driven by Marilyn Barnes. The collision occurred in Grays Harbor County, State of Washington.

2.

Just prior to the collision, the black Ford F-350 was in the right lane of the highway traveling west at about the speed limit. Mr. Newport, driving his vehicle, was paying attention as he drove. Seated with him in the passenger seat was his girlfriend, Hanna Himley. *The sun was going down* and it was sprinkling. The roadway was wet.

3.

In front of the Ford F-350 was a red pickup truck. That truck flashed its brake lights and abruptly changed lanes to the left. As soon as the red pickup moved over, Ms. Himley and Mr. Newport noticed a white Chevy Cavalier partially blocking the right lane of travel. The nose of the car was about halfway into the lane. Mr. Newport slammed on the brakes of his pickup truck and laid on the horn, coming to a stop approximately a foot or a foot and a half away from the white Cavalier. A couple seconds later, the Ford F-350 was struck from behind by the white Ford Ranger. This collision came without any warning.

4.

Ms. Barnes, driving the Ford Ranger, could see a white vehicle near the side of the road as she approached the site of the collision. She was traveling at or about the speed limit. She could not tell if the white vehicle was stopped on the side of the road or was in motion. Her attention was heightened by the vehicle on the side of the road and she briefly tapped her brakes. When the Ford F-350 applied its brakes she applied her brakes as quickly as she could, but was unable to come to a stop without striking the F-350 from behind.

5.

Due to the collision, Ms. Barnes suffered a laceration above her eye and a broken patella, or kneecap. She was treated by paramedics at the scene, taken to Grays Harbor Community Hospital, and then taken to Harborview Medical Center where doctors diagnosed her fractured patella.

6.

Washington State Patrol Troopers responded, spoke with the parties involved in the collision, and spoke with the Defendant. *He admitted to driving the Cavalier. He was backing his vehicle into his driveway, which accesses the westbound side of Highway 12, immediately before the collision.* The Defendant had placed his vehicle in reverse and was backing into his driveway when the F-350 came to a stop in front of him. His vehicle was not struck.

Based upon the foregoing findings of fact, and testimony of the witness at trial, the [c]ourt enters the following conclusions of law:

CONCLUSIONS OF LAW

1.

The court has jurisdiction over the parties and subject matter herein.

2.

The Defendant drove a motor vehicle in Grays Harbor County on October 6, 2017, in the State of Washington.

3

The Defendant operated his motor vehicle with disregard for the safety of others. Bringing a motor vehicle to a complete stop on a busy highway and obstructing traffic, either wholly or partially, let alone operating a motor vehicle in reverse on the shoulder and turning in a manner where part of the vehicle enters the flow of traffic, are maneuvers that, especially in busy traffic conditions, are highly dangerous. Such maneuvers put not only the driver in danger, but also every other motorist on the highway. Motorists do not expect, when driving at highway speeds, to see a vehicle at a stop in their lane of travel. Such a maneuver is flatly dangerous. Therefore, intentionally performing such a maneuver is done with disregard for the safety of others.

4.

The manner in which the Defendant operated his motor vehicle was the proximate cause of the substantial bodily harm suffered by Ms. Barnes. Mr. Newport, driving the F-350, faced with the sudden sight of the Defendant's vehicle in his lane of travel, applied his brakes and was fortunately able to stop short. Ms. Barnes saw the white vehicle on the side of the road, appropriately had her foot on her brake, and applied her brakes without any delay or hesitation as soon as she saw Mr. Newport's F-350 apply its brakes. There is no basis to find that Ms. Barnes was following too closely or otherwise driving negligently. When confronted with an emergency that is no fault of one's own, and when a person so confronted with an emergency acts reasonably, such as applying brakes as soon as possible, that person's response is not a subsequen[t] intervening cause. Mr. Newport acted reasonably in driving. Ms. Barnes acted reasonably in driving. There being no evidence of any other intervening causes, the Defendant's driving is therefore the proximate cause of this collision.

5.

The fractured patella suffered by Ms. Barnes, stipulated to by the Defendant, is an injury of substantial bodily harm.

CP at 22-25 (emphasis added). Based on these findings of facts and conclusions of law, the trial court found Johnson guilty of vehicular assault.

Johnson appeals his conviction.

ANALYSIS

Johnson argues that (1) the trial court erred when it found that the State had established corpus delicti and denied Johnson's motion to dismiss, and (2) the evidence was insufficient to establish that his actions were the proximate cause of Barnes's injuries. He raises several additional issues in his SAG. All of these arguments fail.

I. CORPUS DELICTI

Johnson first argues that the trial court erred in denying his motion to dismiss the case for lack of corpus delicti because there was no independent proof that he drove or operated his vehicle

9

with disregard for the safety of others and, therefore, no independent proof that he committed a criminal act that caused Barnes's injuries. We disagree.

A. LEGAL PRINCIPLES

Under the corpus delicti rule, a defendant's self-incriminating statements cannot be the sole supporting evidence of the conviction. *State v. Dow*, 168 Wn.2d 243, 249, 227 P.3d 1278 (2010). The State must produce independent evidence other than the defendant's self-incriminating statement to provide prima facie corroboration that the crime described in the defendant's statement actually occurred, but this evidence need not be sufficient to support the conviction on a sufficiency of the evidence basis. *State v. Brockob*, 159 Wn.2d 311, 328, 150 P.3d 59 (2006).

The independent evidence need only "provide prima facie corroboration of the crime described in a defendant's incriminating statement." *Brockob*, 159 Wn.2d at 328 (emphasis omitted). "Prima facie corroboration of a defendant's incriminating statement exists if the independent evidence supports a 'logical and reasonable inference of the facts sought to be provided.'" *Brockob*, 159 Wn.2d at 328 (internal quotation marks omitted) (quoting *State v. Aten*, 130 Wn.2d 640, 656, 927 P.2d 210 (1996)). Additionally, "the independent evidence 'must be consistent with guilt and inconsistent with a[ ] hypothesis of innocence.'" *Brockob*, 159 Wn.2d at 329 (alteration in original) (internal quotation marks omitted) (quoting *Aten*, 130 Wn.2d at 660).

We review de novo whether sufficient corroborating evidence exists to satisfy the corpus delicti rule. *State v. Hotchkiss*, 1 Wn. App. 2d 275, 279, 404 P.3d 629 (2017), *review denied*, 190 Wn.2d 1005 (2018). We review the evidence under the corpus delicti rule in the light most favorable to the State. *Brockob*, 159 Wn.2d at 328.

B. EVIDENCE OF A CRIME

Johnson was charged and convicted under RCW 46.61.522(1)(c). Under that statute, "[a] person is guilty of vehicular assault if he or she operates or drives any vehicle . . . [w]ith disregard for the safety of others and causes substantial bodily harm to another." RCW 46.61.522(1)(c). Johnson argues that the only evidence that he drove or operated his vehicle with disregard for the safety of others is the testimony that he was in his vehicle while "the nose of his car [was] about halfway into the lane of oncoming traffic on a rural highway." Appellant's Opening Br. at 3. He contends that these facts do not establish a crime because he could have been pulling out of his driveway into the road, his car could have stalled, or there could have been some other "innocent mishap preventing him from moving out of the way of oncoming traffic."[4] Appellant's Opening Br. at 15.

But Johnson ignores Barnes's testimony that when she saw the white vehicle before Newport suddenly stopped, the white vehicle was near to, but not in the roadway. Between the time Barnes noticed the white vehicle and the time Newport and Himley saw the vehicle and stopped, it had pulled significantly into the right lane of travel. Regardless of whether Johnson was going forward or backward, pulling into the lane of travel of a freeway while other vehicles are present is sufficient evidence to establish that Johnson had driven with disregard for the safety of others for purposes of the corpus delicti rule. And the facts of the short amount of time between Barnes seeing the vehicle near to but not in the roadway and Newport and Himley finding the vehicle halfway into the roadway, are inconsistent with an innocent explanation such as Johnson's

---

[4] Although Johnson also challenges the sufficiency of the evidence of causation and identity, he does not raise corpus delicti issues with regard to those elements.

vehicle stalling or experiencing some "mishap" that kept him from pulling out of the way. Appellant's Opening Br. at 15.

Barnes's and Himley's testimonies, considered together, establish that Johnson pulled his vehicle into the right lane of travel and provide independent corroborating evidence demonstrating that he drove his vehicle with disregard for the safety of others that was inconsistent with innocence. Therefore, there was independent proof that he committed a criminal act that caused Barnes's injuries. Because there was sufficient evidence to establish corpus delicti, we hold that the trial court did not err when it denied Johnson's motion to dismiss based on lack of corpus delicti.

## II. EVIDENCE OF PROXIMATE CAUSE

Johnson next argues that the evidence was insufficient to establish that his actions were *the* proximate cause of Barnes's injuries because the evidence proved that Barnes's own conduct of following too closely and failing to brake in time after observing the white vehicle was close to the highway were a superseding intervening cause of the accident. We disagree.

The test for determining sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt. *State v. Cardenas-Flores*, 189 Wn.2d 243, 265, 401 P.3d 19 (2017). Following a bench trial, we review a trial court's ruling to determine whether substantial evidence supports the trial court's contested findings of fact and whether the findings of fact support the conclusions of law. *State v. Homan*, 181 Wn.2d 102, 105-06, 330 P.3d 182 (2014). We treat findings of fact supported by substantial evidence and unchallenged findings of fact as verities on appeal. *Homan*,

181 Wn.2d at 106. We review de novo challenges to the trial court's conclusions of law. *Homan*, 181 Wn.2d at 106.

Johnson's arguments are not legally supported. First, the State was not required to prove that Johnson's actions were *the* sole proximate cause of Barnes's injuries. The State was only required to prove that Johnson's actions were *a* proximate cause of Barnes's injuries. *State v. Neher*, 112 Wn.2d 347, 348, 350-352, 771 P.2d 330 (1989). Second, only intervening acts that are not reasonably foreseeable qualify as superseding events. *State v. Roggenkamp*, 115 Wn. App. 927, 945, 64 P.3d 92 (2003), *aff'd*, 153 Wn.2d 614, 106 P.3d 196 (2005); *see also* WPIC 90.08[5]. And the possibility that a vehicle on a highway may be following another vehicle too closely to brake in time under these circumstances is reasonably foreseeable, so Barnes's actions could not be considered a superseding cause.

Johnson does not establish that the evidence was insufficient to establish the required proximate cause.

### III. SAG

In his SAG, Johnson appears to assert that he never spoke to Rabe about the accident and that Rabe's testimony was insufficient to establish that Rabe spoke to him (Johnson) because Rabe only referred to "Mr. Johnson;" there were four "Mr. Johnsons" present that evening; and he, Johnson, was inside the house avoiding Rabe. SAG at 2-3. But the evidence presented at trial established that Rabe, who knew Johnson because of prior contacts, spoke to Johnson and this evidence supports the trial court's finding.

---

[5] 11A WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: criminal 90.08 at 278 (4th 2d. 2016) (WPIC).

Johnson also appears to challenge Barnes's testimony that she saw him standing by a fence or a gate, her testimony about where the speed limit changed, and her testimony about the nature of the surrounding area. The trial court made no findings related to these facts, so they are not relevant to the court's verdict and these claims do not establish that Johnson is entitled to relief.

Johnson appears to assert that his father arrived at the scene immediately after the accident, placed his car behind Barnes's car, and activated his flashers to warn approaching traffic. But there was no testimony about these facts, nor would they be relevant to the trial court's verdict. Accordingly, this claim does not establish that Johnson is entitled to relief.

Johnson further appears to challenge the trial court's finding that "[t]he sun was going down"[6] at the time of the accident because, according to the internet, the sunset occurred at 6:44 pm, under RCW 46.37.020[7] it is dark a half-hour after sunset, and the accident occurred at 7:19 pm. But Himley's testimony that it was dusk but not yet dark when the accident occurred supports this finding of fact.

---

[6] CP at 23.

[7] RCW 46.37.020 provides:

> Every vehicle upon a highway within this state at any time from a half hour after sunset to a half hour before sunrise and at any other time when, due to insufficient light or unfavorable atmospheric conditions, persons and vehicles on the highway are not clearly discernible at a distance of one thousand feet ahead shall display lighted headlights, other lights, and illuminating devices as hereinafter respectively required for different classes of vehicles, subject to exceptions with respect to parked vehicles, and such stop lights, turn signals, and other signaling devices shall be lighted as prescribed for the use of such devices.

No. 53189-5-II

Johnson appears to assert that Rabe had announced that it was the white vehicle's fault before any investigation occurred. But Rabe's conclusion is not relevant to the trial court's decision.

We hold that (1) the evidence was sufficient to establish corpus delicti, so the trial court did not err when it denied Johnson's motion to dismiss, (2) the evidence was sufficient to establish that Johnson's actions were a proximate cause of the victim's injuries, and (3) Johnson's SAG issues fail. Accordingly, we affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

SUTTON, J.

We concur:

LEE, C.J.

GLASGOW, J.