IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CRAIG'S AUTOMOTIVE COLLISION CENTER, INC., a Washington corporation; and TRINA H. BARTELS, individually and as Personal Representative of the ESTATE OF STEPHEN C. BARTELS, | ) ) ) ) ) ) | No. 39020-9-III |
| | ) | |
| Respondents/Cross Appellants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CAPSTONE CONSTRUCTION COMPANY, INC., a Washington corporation, | ) ) ) | |
| | ) | |
| Appellant/Cross Respondent, | ) | |
| | ) | UNPUBLISHED OPINION |
| BC ENGINEERS, INC., an Idaho corporation licensed to do business in the State of Washington; and DOES 1 through 50, inclusive, | ) ) ) ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| JASON HERBERT SACKMANN d/b/a J&S CONSTRUCTION, | ) ) | |
| | ) | |
| Third-Party Defendant, | ) | |
| | ) | |
| METAL SALES MANUFACTURING CORPORATION, | ) ) | |
| | ) | |
| Fourth-Party Defendant. | ) | |

No. 39020-9-III
*Craig's Auto. Collision Ctr., Inc. v. Capstone Constr. Co., Inc.*

MURPHY, J. — Craig's Automotive Collision Center, Inc., Stephen Bartels, and Trina Bartels (collectively "Craig's Auto") filed a lawsuit against Capstone Construction Company, Inc. (Capstone) alleging breach of contract, negligence, promissory estoppel, conversion, and violation of the Consumer Protection Act (CPA), chapter 19.86 RCW, all arising out of a building reconstructed by Capstone for Craig's Auto. Capstone counterclaimed, alleging breach of contract, unjust enrichment, and specific performance.[1]

Following a bench trial, the court issued findings of fact, conclusions of law and an order. The trial court concluded: (1) Capstone breached its contract with Craig's Auto by supplying a building to Craig's Auto that was structurally deficient as to the roof and walls, and that Craig's Auto was entitled to a repair of those defects, (2) a complete tear down and rebuild would constitute economic waste and was not warranted, and (3) Capstone was entitled to relief under its breach of contract counterclaim for nonpayment.

Five months later, with repairs on the building still outstanding, the trial court issued a memorandum decision to give the parties finality and conclude the case.

---

[1] There were additional claims involving other parties that were resolved prior to trial and are not at issue in this appeal.

2

The court modified its prior posttrial order and utilized a third-party contractor's estimates of repair costs and time needed to complete repairs in its final calculation of damages. A net damages award of $14,310.19 was made to Craig's Auto.

The court also found that, because each party substantially prevailed in their respective breach of contract claims, an award of attorney fees and costs to any party on those claims would be inappropriate. The trial court did, however, award Capstone $153,119.48 in attorney fees and costs as it successfully defended against Craig's Auto's other four causes of action.

The parties appeal and cross appeal from the trial court's final orders and judgment. We affirm the trial court's mechanism to conclude this case and its net damage award to Craig's Auto. We reverse the trial court's award of attorney fees and costs to Capstone, remand for further proceedings, and award Craig's Auto its attorney fees and costs on appeal.

FACTUAL BACKGROUND

Craig's Auto is a Spokane automotive repair and painting business that operates out of a pre-engineered, steel-framed structure. In February 2016, there was a significant fire at Craig's Auto that destroyed portions of the building and its contents. Craig's Auto held a fire insurance policy with Farmers Insurance Company (Farmers) with coverage

for building damage and loss, as well as business interruption. Capstone is a Spokane business that provides insurance restoration work, including repairs, reconstruction, and new construction after fire and other losses.

The day following the fire, representatives from Farmers and Capstone evaluated the extent of damage and performed an initial determination of the scope of repairs. A contract/work authorization, and direct payment request between Farmers to Capstone, was signed by representatives of Craig's Auto and Capstone that same day. The contract included, among other provisions, a notification to owner regarding a prevailing party attorney fee provision and a standard limited warranty that afforded Capstone the first opportunity to make any repairs, replacements, or corrections to defective construction at no cost to the Craig's Auto within a reasonable period of time. Demolition, including asbestos removal, took place during July and August 2016, Reconstruction of the building commenced in or around September. Craig's Auto reoccupied the building in March 2017 and immediately noticed roof leakage. Capstone twice returned to Craig's Auto but was unable to resolve the issue.

Disputes arose over alleged deficiencies in Capstone's work. In May 2017, Craig's Auto contacted structural engineer Kevin Akesson of James A. Sewell & Associates, LLC, to examine and assess the reconstructed building. Akesson made site

visits on May 24 and June 17. On July 3, Akesson issued a comprehensive report that identified deficiencies with Capstone's work in the following areas: (1) "Building Roofing System," (2) "Building Roof Secondary Structural Framing System," (3) "Primary Structural Frame Coating," and (4) "West Wall Mandoor Installation." Ex. P-17 at 1.

Capstone disputed the structural frame coating deficiency identified in Akesson's report, specifically rusting of the steel frame, but expressed a willingness to undertake repairs on the remaining noted deficiencies. During September and October 2017, a plan was developed, in collaboration with Akesson, to repair the roofing deficiencies with minimal business interruption to Craig's Auto. Capstone offered to conduct the repairs itself or utilize a separate contractor for the work. Craig's Auto ultimately did not agree to the plan for the roof repair, and objected to Capstone undertaking any further repairs to the building.

Craig's Auto retained another structural engineer, Jay Bonnett, to evaluate the building. Bonnett provided his opinions to Craig's Auto in a letter dated December 1, 2017. Bonnett identified other concerns relating to the building with the opinion that the building was vulnerable to damage from strong winds. He agreed with the recommendations of Akesson in his report, and opined that there were additional

deficiencies in the plates above the doors as well as where the walls attached to the roofing structure, noting the areas were not up to code and needed reinforcement.

Craig's Auto took the position that it would accept nothing short of complete reconstruction of its building. It contacted Baker Construction, a general contractor, and requested a bid for rebuilding the walls and roofing structure, excluding the office area of the building. On January 9, 2018, Baker Construction submitted a proposal for removing and rebuilding the walls and roofing system, with a cost totaling $539,271. In May 2021, Baker Construction provided Craig's Auto with an updated bid with the cost of the demolition and rebuild now at $701,497.

Craig's Auto continued to withhold payment to Capstone. No repairs to the building had been made by the time the case proceeded to trial in April 2022.

PROCEDURAL BACKGROUND

On March 27, 2018, Craig's Auto initiated its lawsuit against Capstone, alleging: (1) breach of contract, (2) promissory estoppel, (3) negligence, (4) conversion, and (5) violation of the CPA. Craig's Auto requested the following relief:

> 1. Judgment against [Capstone] for specific damages plus interest in an amount to be proved at trial;
> 2. [Craig's Auto's] costs, disbursements and reasonable attorney[] fees incurred herein as provided for under RCW 19.86.090 and as otherwise allowed by law;

3. Treble damages as provided for under Section 19.86.090 of the [CPA];
4. For such other and further relief as the Court deems just and equitable.

Clerk's Papers (CP) at 19.

Capstone answered the complaint and asserted 25 affirmative defenses, one which was that Craig's Auto had failed to afford Capstone an opportunity to cure any alleged defects. Capstone also asserted counterclaims against Craig's Auto for breach of contract, specific performance, and unjust enrichment.[2]

An eight-day bench trial commenced in April 2022. At trial, Craig's Auto maintained the position that nothing short of a complete tear down and reconstruction of the building would put Craig's Auto in the position it would have been in had Capstone performed its contractual duties. Baker Construction's original and updated bid, totaling $701,497, for demolition and reconstruction of the walls and roofing structure, was entered into evidence. There was testimony that Craig's Auto would need to close its business for five months during the teardown and reconstruction. Craig's Auto also submitted a report from accountant Paul Fruci, who calculated Craig's Auto's business loss during shutdown to be $507,739.

---

[2] As stated previously, there were additional claims involving other parties that were resolved prior to trial and are not at issue in this appeal.

At trial, Capstone conceded there were deficiencies that needed repair. However, Capstone argued at least some of Craig's Auto's claimed damages were caused by Craig's Auto's failure to mitigate, and that the economic waste doctrine precluded the claim that full demolition and reconstruction was necessary. Capstone provided reports from two engineers who agreed a full rebuild was not needed but some repairs were necessary.

Following trial, on June 2, 2022, the trial court entered findings of fact, conclusions of law and an order. The trial court dismissed Craig's Auto's claims for promissory estoppel, conversion, negligence, and violation of the CPA. The trial court did not expressly rule on Capstone's counterclaims for unjust enrichment or specific performance.

The court found Craig's Auto "did not present any separate cost to and repair and replace the roof (including the purlins) as distinct from the other work, such as adding steel supports on the wall." CP at 915; *see also* 3 Rep. of Proc. (RP) (May 5, 2022) at 1179-81. The trial court determined "[t]he weight of the evidence is that the walls and roof of [Craig's Auto's] building do not need to be torn down and reconstructed for the building to be structurally sound." CP at 915. The trial court found "that, at most, Capstone delivered a building that had deficiencies and defects that can be remedied."

CP at 915. On Craig's Auto's breach of contract claim, the trial court concluded "Capstone breached its contract . . . by supplying a building that was structurally deficient as to the roof and walls. . . . It would constitute economic waste to rebuild the building as requested by [Craig's Auto]." CP at 916.

As to Capstone's breach of contract counterclaim, the trial court concluded Capstone was entitled to relief in an amount to be determined at a later date. The trial court then ordered Capstone to arrange for a third-party, licensed and bonded contractor to carry out the scope of repairs "as set out in Conclusion of Law #4." CP at 916. Craig's Auto was ordered to allow the work to proceed when it could be arranged to be done, with the failure of Craig's Auto to allow the work to proceed discharging the obligation of Capstone under the contract. Craig's Auto would have an opportunity to submit a claim to the court for losses associated with any business interruption that occurred during the repair process. Once the repair work was completed, the debt owed to Capstone would be reduced by the cost of the repairs. Capstone would then be permitted to submit its net billing for final decision on any finance charges and fees. The trial judge, who was set to retire on September 30, would retain the case "until the completion of the resolution as set out in this decision, to resolve any issues and enter final orders." CP at 917.

Capstone filed a notice of appeal on June 30, 2022, challenging the trial court's June 2, 2022, findings, conclusions, and order. Craig's Auto sought cross review on July 13, 2022. The appeal was stayed by a commissioner of this court pending the trial court's issuance of a final judgment.

Concurrently, in conformance with the trial court's June 2 order, Capstone arranged for a third-party contractor, Prestige Construction Services (Prestige), to complete the repairs, and submitted an estimate from Prestige totaling $113,052.30. On July 20, Capstone represented to Craig's Auto that Prestige, who had not yet inspected the building, could perform and complete the repairs in a two- to three-week period during October 2022.

On July 29, 2022, Capstone filed a notice of compliance with the court's June 2 order, and moved for a final order and judgment, and an award of attorney fees and costs. Capstone also requested prejudgment and postjudgment interest on any amounts due from Craig's Auto. Notably, Capstone relied on the business loss of use report by Craig's Auto's accounting expert, Paul Fruci, in its own calculations of business interruption costs. Capstone expressly stated:

> The simple fact is that the Court can enter a judgment and order consistent with the Prestige estimate and approximation of time to complete the repairs. Such expenses can be offset against Capstone's counterclaim sums and should [Craig's Auto] 1) decline to use Prestige's services, or

10

> 2) the sums contained in the estimate or potential loss of use were to change, then an amended judgment and order could be entered with the Court at that time.

CP at 1102. Capstone urged the court to enter judgment based on the Prestige estimate of costs and time needed for repair, and Paul Fruci's loss of use calculations.

Craig's Auto objected to the entry of judgment, requested CR 11 sanctions, and several days later requested alternative relief that included an opportunity to meet with Prestige and their project engineer to inspect the building and review the estimate and timeline.[3]

Capstone objected to Craig's Auto's alternative relief proposal and reiterated its request that the court issue a final judgment. It noted that the continued acrimonious relationship between the parties was a hindrance to bringing the matter to a close, and that the only avenue remaining to move the case forward toward appeal was for the court to enter a final order and judgment.

---

[3] Craig's Auto also included in its request for alternative relief that: (1) Capstone be required to disclose the amounts it received in settlements with other parties, and that those amounts be used to offset any amount owed by Craig's Auto to Capstone on its breach of contract counterclaim, and (2) Craig's Auto be given additional time to review the billing records of counsel for Capstone.

11

The trial court held a hearing on August 17, 2022. The parties and the court acknowledged continuing issues caused by the lack of definitive repair costs or timeline to complete the repairs. The trial court set a hearing for September 16, 2022, to allow the parties additional time to reach an agreement on a final cost and time estimate with Prestige to support the entry of judgment.

Prestige's engineer thereafter met with Craig's Auto, inspected the building, and provided an updated cost estimate of $203,665.12, with the expected timeline for repairs set to take six to eight weeks. While Prestige initially agreed to complete the work, it later expressed an unwillingness to proceed with the work given the status of the pending litigation.

At a hearing on September 16, 2022, Craig's Auto assented to relying on the updated estimate from Prestige to enter a final judgment. However, Capstone expressed a new concern that entering a final judgment with only the updated Prestige estimate but, without a signed contract between Prestige and Craig's Auto, would not result in the work being completed, noting that Craig's Auto had not verified that it would use the contractor Capstone had found. Capstone represented that, once there was a contract between Craig's Auto and Prestige, it would agree "for the purposes of entering a final order" to using the Prestige estimate to determine the cost of repairs, but objected to the

court having authority to enter an order compelling Capstone to have an offset for

damages posttrial when no evidence was offered by Craig's Auto at trial on the amount

of damages for repairs. RP (Sept. 16, 2022) at 13-14. Capstone further objected to using

the Prestige estimate to determine loss of use damages.

On November 3, 2022, the court issued the following memorandum decision:

> The Court entered its Findings, Conclusions and Order in this matter on June 2, 2022, following trial in April and May. Pursuant to the Order, the Court directed Capstone to arrange for a third-party contractor to complete a certain scope of repairs.
>
> Capstone did secure a third-party contractor that provided a bid as of early September in the sum of $203,665.12. As of that date, the third-party contractor, Prestige Construction Services, was willing to do the work. Subsequently, Prestige has indicated an unwillingness to proceed given the litigation situation.
>
> The Court is of the belief that the litigation needs to be brought to a close so the parties can move past this litigation. As a follow up to the Order of June 2, 2022, the Court finds that although the repairs are not done as contemplated, a hard number for the repair of [the Craig's Auto] building now exists. It is the Court's understanding this repair cost is a result of a physical inspection of the property with an engineer present.
>
> By this Memorandum Decision, the Court modifies its prior decision to provide a basis for a final Judgment to be entered.
>
> The Court finds the cost of repairs to [the Craig's Auto] building to be $203,655.12. Additionally, the Court finds the business will need to be closed for a period of seven weeks (the repair estimate indicated 6-8 weeks). Based upon the testimony at trial and the subsequent declaration of Paul Fruci, the cost of the business interruption is $216,250.07.
>
> The Court finds the net owed debt to Capstone for the project is $388,157.10 (see Finding of Fact #20). Of that amount, $366,690.55 is the net billing for the project and $21,466.55 represents the billing for the

13

emergency securing of the building post-fire and the cleaning and repair of personal property. These sums are without finance charges.

The Court finds it's appropriate to treat these sums differently in the resolution of this case. The contract billing of $366,690.55 relates to the construction of the [Craig's Auto] building and is subject to a cost of repair offset. The billing of $21,466.55 is not related to the construction project and stands as an independent debt.

$21,466.55 for the non-construction debt is appropriately awarded to [Capstone]. While there was some testimony from [Craig's Auto] as to their dissatisfaction with some equipment and personal property cleaning, [Capstone] prevailed on this issue at trial, with the Court awarding this sum in it's earlier Order. As a result, this sum carries interest (finance charge) from April 20, 2017, the last billing from Capstone to [Craig's Auto] showing the final supplement (Exhibit 106). At 18 percent annually, that sum is $17,387.90 as of October 17, 2022. The total owing on this debt is $38,854.45.

The Court adopts the analysis of [Capstone] as to offsetting debts contained in its motion dated July 29, 2022, at pages 7 and 8. The Court finds the sum to be awarded to [Craig's Auto] for repairs and business interruption to be $419,855.19. [Capstone] is entitled to the offset under the construction contract of $366,910.55 leaving a net of $52,944.64. As noted above, [Capstone] is entitled to a judgment of $38,854.45 on the non-construction debt. Offsetting the two debts, [Craig's Auto is] entitled to a judgment of $14,310.19.

As to fees and costs, the Court holds that in light of [Craig's Auto's] request for over one million dollars in damages on its breach of contract claim, an award of less tha[n] $15,000.00 does not make [Craig's Auto] the "prevailing party" under the contract and under RCW 4.84.330. Both parties prevailed on substantial issues as to the breach of contract claim as evidenced by the final judgment on that claim. As noted in Marassi v. Lau, 71 W[n]. App. 912[, 859 P.2d 605] (1993), when this occurs, an award of attorney[] fees is not appropriate.

As also noted in Marassi, if there are more than one claim being litigated, the Court should consider a proportionality approach, awarding fees to the party that prevailed on any given claim. Here, [Capstone] prevailed on the four claims other than the breach of contract. Those four

14

claims were either dismissed at the end of [Craig's Auto's] case or by the Court's Order of June 2, 2022. Accordingly, [Capstone] is entitled to an award of fees under the contract on those claims. The Court directs [Capstone]'s counsel to prepare a billing for fees and costs as related to its defense of the four dismissed claims and to present that to the Court with a proposed Order and Judgment for consideration, with copies to [Craig's Auto's] counsel.

The Court directs [Craig's Auto's] counsel to prepare a Judgment based upon this decision as set out above and to present that to the Court with copies to [Capstone]'s counsel.

The Court would direct the final pleadings be filed no later than November 15, 2022, with paper copies to the Court Administrator's Office. Any response can be submitted by November 23, 2022. The Court will consider the matter on the pleadings on November 28, 2022.

CP at 1129-32.

Capstone moved for reconsideration on the grounds that Craig's Auto did not meet its evidentiary burden at trial as to damages and, alternatively, asked for interest to be awarded to Capstone for the principal amount of $366,690.55, which was the monies owed by Craig's Auto to Capstone for work performed. Capstone claimed in its motion that the trial court lacked a basis to order Capstone to generate evidence posttrial on the element of damages in Craig's Auto's breach of contract claim.

Similarly, Craig's Auto objected to Capstone's proposed judgment and order regarding court's memorandum decision on attorney fees and costs. Craig's Auto objected to the trial court awarding Capstone attorney fees and costs in relation to defending against the four causes of action that were ultimately dismissed by the trial

15

court. Craig's Auto argued this was contrary to Washington contract law, was illogical and unjust, and that Craig's Auto should not have to pay. Craig's Auto further argued that the trial court misapplied *Marassi*.

The trial court summarily denied the motion for reconsideration submitted by Capstone, as well as Craig's Auto's objection to Capstone's proposed judgment.

Capstone presented a proposed judgment and order, consistent with the trial court's November 3, 2022, memorandum decision on attorney fees and costs. The court entered the judgment and order on January 6, 2023. Capstone was awarded $135,346.75 in attorney fees and $17,772.73 in costs for defending against Craig's Auto's claims of (1) negligence, (2) promissory estoppel, (3) conversion and (4) violation of the CPA, pursuant to the parties' contract and RCW 4.84.330.

Concurrent with the January 6 judgment and order, the trial court filed separate findings of fact, conclusions of law, and an order regarding the fee and cost award. The court found that Capstone presented detailed billing statements for attorney fees and costs that reflected time spent, descriptions of work done, rates charged by the individuals doing the work, with the degree of specificity sufficient for the court to adequately review the request. The hourly rates charged were found to be reasonable, with it additionally noted that there were no objections made to the referenced rates. The trial

court further found that the attempt to segregate time between the breach of contract claim and the other four causes of action was not possible, and in presiding over the trial, the trial court observed that the five asserted claims brought by Craig's Auto all arose out of one factual scenario. Therefore, while each of the five claims had separate legal bases, there were common witnesses for all claims, and it would be difficult to separate billing as to specific claims. Exercising its discretion, the trial court stated it based an award of fees and costs in conformance with *Clausen v. Icicle Seafoods, Inc.*, 174 Wn.2d 70, 272 P.3d 827, *cert denied*, 568 U.S. 823, 133 S. Ct. 199, 184 L. Ed. 2d 39 (2012). The trial court reduced by 50 percent the fees and costs requested by Capstone. Attorney fees of $270,693.50 were reduced to $135,346.75. Costs of $35,575.46 were reduced to $17,772.73. The total award to Capstone for attorney fees and costs was $153,119.48.

Once the trial court entered its final order and judgment, the parties filed amended notices of appeal and cross appeal. The stay of appellate proceedings was then lifted.

ANALYSIS

CAPSTONE'S APPEAL

Capstone's issues on appeal primarily relate to: (1) the authority of the trial court to bring closure to the case by fashioning what Capstone characterizes as "equitable relief," and (2) the trial court's calculation of attorney fees and costs.

## 1. Propriety of the remedy

The trial court concluded Capstone breached its construction contract with Craig's Auto based on its findings that Craig's Auto was damaged when Capstone supplied a building that was structurally deficient. On appeal, Capstone argues the trial court erred in awarding Craig's Auto repair damages under the breach of contract claim. Capstone claims Craig's Auto cannot prevail on its breach of contract claim because Craig's Auto presented evidence of damages at trial only in the context of a complete demolition and rebuild. Capstone argues the failure of Craig's Auto to present evidence on the cost of repair means Craig's Auto failed on an essential element of their breach of contract claim and, as a result, it is not entitled to any recovery for damages.

In a related vein, Capstone claims the trial court erred in granting equitable relief to Craig's Auto and fashioning an equitable remedy when the court ordered Capstone, in its June 2, 2022, posttrial order, to arrange for a third-party contractor to perform repairs to structural deficiencies in the Craig's Auto building, the scope of which was set forth in one of the court's conclusions of law. Capstone also assigns error to the trial court's reliance in its November 3, 2022, memorandum decision, on the information generated by the third-party contractor in its bid to perform the repairs when that third-party contractor ultimately declined to proceed with the repairs in light of the status of the

ongoing litigation. Capstone contends that the information from the third-party contractor's bid was unreliable because it was presented posttrial without an opportunity for challenge or cross-examination.

Capstone argues Craig's Auto had an adequate remedy at law for the breach of contract claim: monetary damage. According to Capstone, it was error for the trial court to craft a resolution based on what Capstone characterizes as "equitable" when such relief had neither been pleaded in the complaint nor proved by Craig's Auto at trial.

We discuss the measure of damages in a breach of construction contract claim and address the contentions raised by Capstone. In doing so, we hold the trial court had the authority to fashion the remedy it ordered and did not abuse its discretion in doing so.

### 1.1   The trial court's findings of fact are verities on appeal

As an initial matter, Capstone made a generalized claim on appeal that substantial evidence did not support the trial court's findings. Among numerous findings of fact and conclusions of law, the trial court made a finding that Craig's Auto was damaged as a result of Capstone's breach of contract in supplying a building that had construction defects.

"We review the trial court's decision following a bench trial to determine whether the findings of fact are supported by substantial evidence and whether those findings

19

support the conclusions of law." *224 Westlake, LLC v. Engstrom Props., LLC*, 169 Wn. App. 700, 720, 281 P.3d 693 (2012). "'Substantial evidence' is a quantum of evidence sufficient to persuade a rational fair-minded person that the premise is true." *Newport Yacht Basin Ass'n of Condo. Owners v. Supreme Nw., Inc.*, 168 Wn. App. 56, 63-64, 277 P.3d 18 (2012). "If that standard is satisfied, we will not substitute our judgment for that of the trial court even though we might have resolved disputed facts differently." *Green v. Normandy Park Riviera Section Cmty. Club, Inc.*, 137 Wn. App. 665, 689, 151 P.3d 1038 (2007). We consider unchallenged findings of fact verities on appeal, and we review conclusions of law de novo. *See Perry v. Costco Wholesale, Inc.*, 123 Wn. App. 783, 792, 98 P.3d 1264 (2004).

Although Capstone claims substantial evidence does not support the trial court's findings, it has not assigned error to any specific findings of fact. RAP 10.3(a)(4) requires that an appellant's opening brief must include a "separate concise statement of each error a party contends was made by the trial court." "A separate assignment of error for each finding of fact a party contends was improperly made must be included *with reference to the finding by number*." RAP 10.3(g) (emphasis added). Capstone's failure to comply with these rules makes the trial court's findings "'the established facts of the case'" and verities on appeal. *State v. Roggenkamp*, 115 Wn. App. 927, 943, 64 P.3d 92 (2003)

(quoting *Olivio v. Rasmussen*, 48 Wn. App. 318, 319 n.1, 738 P.2d 333 (1987)), *affirmed*, 153 Wn.2d 614, 106 P.3d 196 (2005).

    *1.2    Measure of damages in a breach of construction contract claim*

    An award of damages for breach of contract serves the purpose of placing an injured party in "the same economic position [they] would have occupied" as if they had received complete performance under the contract. *TMT Bear Creek Shopping Center, Inc. v. PETCO Animal Supplies, Inc.*, 140 Wn. App. 191, 210, 165 P.3d 1271 (2007). In the context of construction contracts, courts have long acknowledged that there are special concerns that arise in crafting damage awards. *Lincor Contractors, Ltd. v. Hyskell*, 39 Wn. App. 317, 320-21, 692 P.2d 903 (1984). This is because the objective is to put a building owner in the pecuniary position they would have enjoyed had the contract been properly performed by the contractor. *Lincor*, 39 Wn. App. at 321. This has necessitated the crafting of special rules for the measure of damages. *Eastlake Constr. Co., Inc. v. Hess*, 102 Wn.2d 30, 39, 686 P.2d 465 (1984).

    Our Supreme Court in *Eastlake* adopted the alternatives to measuring loss in value of performance in breach of construction contact cases found in section 348 of the *Restatement (Second) of Contracts* (Am. L. Inst. 1981):

(2) If a breach results in defective or unfinished construction and the loss in value to the injured party is not proved with sufficient certainty, [they] may recover damages based on

(a) the diminution in the market price of the property caused by the breach, or

(b) the reasonable cost of completing performance or of remedying the defects if that cost is not clearly disproportionate to the probable loss in value to [them].

102 Wn.2d at 47 (quoting RESTATEMENT, *supra*, § 348, at 119-20. Particularly relevant here, the *Eastlake* court relied on a comment in section 348 relating to incomplete or defective performance of a construction contract:

Sometimes, especially if the performance is defective as distinguished from incomplete, it may not be possible to prove the loss in value to the injured party with reasonable certainty. In that case [they] can usually recover damages based on the cost to remedy the defects. Even if this gives [them] a recovery somewhat in excess of the loss in value to [them], it is better that [they] receive a small windfall than that [they] be undercompensated by being limited to the resulting diminution in the market price of [their] property.

. . . .

If an award based on the cost to remedy the defects would clearly be excessive and the injured party does not prove the actual loss in value to [them], damages will be based instead on the difference between the market price that the property would have had without the defects and the market price of the property with the defects.

*Id*. at 47-48 (quoting RESTATEMENT, *supra*, § 348 cmt. c, at 121).

Capstone argues that with Craig's Auto presenting no evidence at trial on damages other than the cost of complete demolition and rebuild,[4] Craig's Auto's breach of construction contract claim must fail. Capstone's position on damages does not comport with *Eastlake* and its adoption of section 348 of the *Restatement*. The application of the *Restatement* becomes necessary when, as here, it is not possible to establish loss of value from defective performance with any reasonable certainty, and leads to a common sense assessment of the proportionality of the cost of remedying defects to the value of the benefit conferred by that remedy. *See Eastlake*, 102 Wn.2d at 48-49 (citing RESTATEMENT, *supra*, § 348(2)(a)-(b)).

While it is correct that Craig's Auto relied at trial exclusively on the theory that the entire structure was defective, Craig's Auto did present evidence of damages to support this theory. Damages must be proved with reasonable certainty, but this doctrine is concerned more with the fact of damages than with the extent or amount of damages. *Lewis River Golf, Inc. v. O.M. Scott & Sons*, 120 Wn.2d 712, 717, 845 P.2d 987 (1993). Uncertainty as to the amount of damages does not preclude the right of recovery. *Holmquist v. King County*, 192 Wn. App. 551, 560-61, 368 P.3d 234 (2016). The rule is

---

[4] Craig's Auto took the position at trial that, because the construction deficiencies were so severe, only a complete demolition and rebuild of their facility would make them whole.

that the "'wrongdoer shall bear the risk of the uncertainty which his own wrong has created.'" *Moore v. Wash. State Health Care Auth.*, 181 Wn.2d 299, 314, 332 P.3d 461 (2014) (quoting *Wenzler & Ward Plumbing & Heating Co. v. Sellen*, 53 Wn.2d 96, 99, 330 P.2d 1068 (1958)).

Craig's Auto presented evidence during trial that the cost to replace its building and make it whole, inclusive of business interruption loss, was $1,209,236.53. The court received evidence on many aspects of defects in Capstone's construction. Although Capstone acknowledged certain deficiencies, it declined to present any evidence regarding the cost of repairs, despite having access to witnesses capable of doing so. Instead, Capstone pursued a remedy of specific performance and asserted a right to cure. As a result, the trial court was left to determine the costs of repairs after concluding that: (1) Capstone had breached the construction contract by delivering a building with structural deficiencies in the roof and walls, (2) Craig's Auto was entitled to a repair of those defects, and (3) a third-party contractor should make the repairs.

The trial court found demolition and reconstruction to be economic waste based on the evidence presented at trial. However, the trial court identified a specific list of defects attributable to the work performed by Capstone. The trial court determined that if the defects were repaired, then the construction contract could be fulfilled. While the parties

did not present the court with evidence to finalize the measure of damages, the workable

solution devised by the trial court was to have a third-party contractor make the repairs

and deduct those costs from the amounts owed to Capstone.

The approach structured by the trial court offered a well-reasoned and sensible

solution in light of the law on the measure of damages. Given the prior unsuccessful

attempts by Capstone to make repairs, as well as Craig's Auto's subsequent ban of

Capstone from its premises and Capstone's repeated offers prelitigation and during trial

to have a third-party contractor make the repairs, the resolution crafted by the trial court

to address the identified defects was both sensible and reasonable.

### 1.3   The granted relief was within the trial court's authority

Capstone initially challenges whether the trial court had the authority to grant

"equitable relief," arguing equitable relief was neither pleaded nor proved by Craig's

Auto. "'[W]hile the fashioning of the remedy may be reviewed for abuse of discretion,

the question of whether equitable relief is appropriate is a question of law.'" *Borton &*

*Sons, Inc. v. Burbank Props., LLC*, 196 Wn.2d 199, 206, 471 P.3d 871 (2020) (quoting

*Niemann v. Vaughn Cmty. Church*, 154 Wn.2d 365, 374, 113 P.3d 463 (2005). We start

with de novo review of whether the trial court ordering Capstone to arrange for a third-

party contractor to carry out the identified repairs was an equitable remedy that was

appropriate as a matter of law. We then move to whether the trial court abused its

discretion in fashioning the relief.

Capstone is correct that Craig's Auto's generic request for "just and equitable

relief" is insufficient to invoke the trial court's equitable powers.[5] We do not, however,

characterize the resolution ordered by the trial court to be an "equitable remedy."

Rather, as discussed above, it is a remedy that conforms to section 348 of the *Restatement*

as adopted by our Supreme Court in *Eastlake*.

At trial, both parties chose to pursue an all or nothing approach, leaving the trial

court in the position of needing to determine the cost of repairs necessary to remedy the

construction defects. Craig's Auto offered evidence on the cost of complete demolition

and rebuild, but did not present evidence on the costs of repair. Similarly, Capstone

insisted on its right to cure the defects itself and likewise offered no evidence on repair

---

[5] In its complaint, Craig's Auto concluded its prayer for relief with a request for "such other and further relief as the [c]ourt deems just and equitable." CP at 19. A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." CR 8(a)(1). Pleadings are liberally construed. *See State v. Adams*, 107 Wn.2d 611, 620, 732 P.2d 149 (1987). However, a complaint must "give the opposing party 'fair notice'" of the nature of the plaintiff's claim. *See Champagne v. Thurston County*, 163 Wn.2d 69, 84, 178 P.3d 936 (2008) (quoting *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn.2d 342, 352, 144 P.3d 276 (2006)). "[B]oilerplate language" in a complaint making a request for "just and equitable" relief is insufficient to invoke the court's equitable powers. *See Crafts v. Pitts*, 161 Wn.2d 16, 29 n.10, 162 P.3d 382 (2007).

damages. The trial court, posttrial, ordered Capstone to arrange for a third-party contractor to make the repairs. The third-party contractor initially estimated it would take two to three weeks to complete the repairs at a cost of $113,052.30. Two months later, after a walk-through of the Craig's Auto facility with an engineer, the third-party contactor revised their cost estimate to $203,655.12 with eight weeks to complete the repairs. After the third-party contractor ultimately declined to perform the repairs, the trial court used the updated cost and timeline figures obtained from that contractor to decide the costs of repairs. This aligns with the doctrine of substantial performance and calculation of measure of damages in a breach of construction contract claim. The trial court devised a practical and reasonable solution to the lack of evidence presented at trial on damages. The trial court's remedy restores the parties' bargain while accounting for the breach, which is consistent with Washington law.

## 2.    *Other assignments of error*

Capstone additionally assigned error to the trial court's denial of attorney fees for the breach of contract claim and the denial of Capstone's motion for reconsideration. In holding that the trial court did not err in its award of contract damages, we determine that Capstone's related assignments of error likewise fail.

27

CRAIG'S AUTO'S CROSS APPEAL

1.      *Attorney fees and costs awarded to Capstone*

On cross appeal, Craig's Auto does not challenge the trial court's decision to decline to award either party attorney fees and costs on their respective breach of contract claims or the finding that both parties prevailed on substantial issues on their breach of contract claims.

Rather, Craig's Auto challenges the trial court's ruling that Capstone was entitled to $153,119.48 in attorney fees and costs related to its successful defense of the other four causes of action asserted by Craig's Auto.

In its complaint and throughout trial, Craig's Auto asserted five separate causes of action. The first claim was for breach of contract related to its contract for Capstone to rebuild the Craig's Auto building "to be at least equivalent to the original structure and . . . comply with applicable building code requirements and engineered design information." CP at 15-16. The second cause of action was that Capstone negligently deviated from engineered design standards, building code requirements, and accepted practices of contractors, resulting in substandard work. Craig's Auto also claims Capstone performed negligently in the hiring or supervising of its subcontractors. Promissory estoppel was the third cause of action with Craig's Auto claiming Capstone

28

promised a reconstructed building free from defects in the materials and workmanship,

with Craig's Auto relying on this promise in contracting with Capstone for the project.

The fourth cause of action was a conversion claim based on Craig's Auto's assertion that

Capstone deprived Craig's Auto of personal property and fixtures that were on business

premises and under the control of Capstone during the period of reconstruction. Finally,

Craig's Auto made a CPA claim, alleging that Capstone's failure to acquire and install

proper materials constituted unfair and deceptive acts in the operation of its business,

with those acts and practices having the capacity to deceive a substantial portion of the

public and to be repeated, impacting a public interest.

Approximately one month after conclusion of the bench trial, the court entered

findings of fact and conclusions of law, and issued an order. The conclusions of law

addressed the five causes of action asserted by Craig's Auto and the counterclaim of

Capstone for breach of contract:

1. At the close of [Craig's Auto's] case, the Court dismissed the claims for promissory estoppel and conversion. It took the request to dismiss the [CPA] violation under advisement and allowed the case to proceed as to the breach of contract and negligence claims.
2. The negligence claim is dismissed. The parties have a signed contract. Given that, there is no basis for this claim.
3. The [CPA] claim is also dismissed. No unfair or deceptive act or practice was established at trial by or on behalf of Capstone. The claim is for defective workmanship in a building. The evidence demonstrated nothing more.

4. Capstone breached its contract with [Craig's Auto] by supplying a building that was structurally deficient as to the roof and walls. [Craig's Auto is] entitled to a repair of the defects, both as to the structural issues and the issues with the leaking roof. That repair does not encompass rebuilding the walls and roof after a demolition as requested by [Craig's Auto]. The repairs that are appropriate, given the evidence, include repairing the purlins, remedying the roof system deficiencies, adding steel reinforcement to the side walls, reinforcing the jamb studs at the door openings, and repairing the west wall man door. There were no other deficiencies that were casually related to the work done by Capstone based upon the evidence.
5. It would constitute economic waste to rebuild the building as requested by [Craig's Auto].
6. Capstone is entitled to relief under its counterclaim in an amount to be determined by the Court as set out below.

CP at 915-16. In its November 3, 2022, memorandum decision, after going through its calculations and reasoning that resulted in a net award of $14,310.19 to Craig's Auto on the competing breach of contract claims, the trial court addressed the attorney fee and cost issue:

> As to fees and costs, the Court holds that in light of [Craig's Auto's] request for over one million dollars in damages on its breach of contract claim, an award of less than $15,000.00 does not make [Craig's Auto] the "prevailing party" under the contract and under RCW 4.84.330. Both parties prevailed on substantial issues as to the breach of contract claim as evidenced by the final judgment on that claim. As noted in <u>Marassi v. Lau</u>, 71 W[n]. App. 912 (1993), when this occurs, an award of attorney[] fees is not appropriate.
>
> As also noted in <u>Marassi</u>, if there [is] more than one claim being litigated, the Court should consider a proportionality approach, awarding fees to the party that prevailed on any given claim. Here [Capstone] prevailed on the four claims other than the breach of contract. Those four

30

claims were either dismissed at the end of [Craig's Auto's] case or by the Court's Order of June 2, 2022. Accordingly, [Capstone] is entitled to an award of fees under the contract on those claims. The Court directs [Capstone]'s counsel to prepare a billing for fees and costs as related to its defense of the four dismissed claims and to present that to the Court with a proposed Order and Judgment for consideration, with copies to [Craig's Auto's] counsel.

CP at 1131.

Numerous submissions were made by the parties with regard to attorney fees and costs, culminating in the entry on January 6, 2023, of the trial court's findings of fact, conclusions of law, and order regarding fees:

As set out in the Court's Decision of November 3, 2022, the award of fees and costs to Defendant Capstone relates to the successful defense of four of the five causes of action brought against it by [Craig's Auto]. As set out in its pleadings, Capstone details total attorney fees incurred through November 15, 2022, of $427,312.00 and costs incurred of $35,840.46, also as of November 15, 2022. Of those sums, Capstone is requesting $270,693.50 in fees and $35,545.46 in costs.

Based upon the pleadings herein, the Court makes the following Findings of Fact and Conclusions of Law:

FINDINGS OF FACT:

1) The defendant Capstone has submitted detailed billing statements for attorney's fees and costs incurred in this matter through November 15, 2022, by way of the attachments to the Affidavits of [counsel] submitted in support of the fee request.
2) The billing statements reflect time spent on this matter, a description of the work done, and the rate charged by the individuals doing the work. (Some of this information is contained in [counsel]'s Affidavits.) This specificity is sufficient for the Court to adequately review the request.

31

3) The hourly rates charged range from $150.00 for paralegal work to $315.00 for the highest fee charged by an attorney. The Court finds these rates to be reasonable for legal work done in Spokane, Washington. Additionally, the Court has not observed an objection to these rates by [Craig's Auto].

4) No declaration or affidavit has been filed by [Craig's Auto] detailing fees and costs incurred by them for a comparative analysis by the Court.

5) No expert testimony was submitted by either party.

6) In an attempt to segregate time spent on the four causes of action it prevailed on, Capstone has designated the entries on its billings statements it asserts relate to the defense of those four claims. This segregation was done by highlighting in yellow time entries on the attachments to the Supplement Affidavit of [counsel] (dated November 17, 2022).

7) The Court finds the attempt to segregate time is not sufficient. The Court will cite three examples which are not exhaustive. The trial extended over parts of nine separate days. Capstone has assigned all trial time to the four dismissed claims, despite two of the claims being dismissed at the end of [Craig's Auto's] case and ignoring the majority of trial time was spent on the breach of contract claim. The same is true with time entries that designate trial preparation, including witness testimony outlines. Lastly, Capstone unsegregated time for reviewing exhibits, preparing Motions in Limine, responding to [ER] 904 designations and other evidentiary issues at trial.

8) Based upon this Court presiding at trial, it is clear the majority of the testimony related to the breach of contract claim. The negligence, promissory estoppel and conversion claims were raised and testified to as well, but occupied less than half of trial time. The [CPA] claim was raised in testimony to a limited extent. The time spent on that claim was due more to the serious nature of possible penalties in the event of a violation, as opposed to the amount of time for testimony.

9) The five asserted causes of action[], or claims, brought by [Craig's Auto], all arose out of one factual scenario, namely, the reconstruction of a building after a fire loss. While each claim had a separate legal basis, common witnesses would exist across those claims. As a result,

32

time prepping for trial and attending trial would naturally involve non-segregated billings that would be difficult to break into separate segments.

CONCLUSIONS OF LAW:

1) It is the burden of the party requesting fees to demonstrate the request is reasonable. This includes detailed fee records, time spent that is not wasteful, duplicative, or excessive, a reasonable hourly rate, and a request that only includes time that is a basis for fee-shifting to another party.
2) Here the Defendant Capstone submitted billings that were detailed in terms of time activity and hourly rate. The billings met the legal standard for a fee award to be considered.
3) Although the Defendant Capstone attempted to separate or segregate its billed time into entries that were for claims that it prevailed upon, in many instances the billing entries do not ultimately achieve segregation.
4) Due to the nature of the claims arising from a single course of conduct and events, segregating time is a difficult and perhaps impossible task in this matter.

Based upon the foregoing, the Court will exercise its discretion and base an award of fees and costs on the analysis contained in the decision in the case of Clausen v. Icicle Seafoods, Inc., 174 Wn.2d 70, 272 P.3[d] 827[] (2012). The fee and cost request will be reduced by fifty percent to account for the primary claim (breach of contract) not being a cause of action for which any attorney[] fee award was allowed.

The request for attorney[] fees of $270,693.50 is reduced to $135,346.75. The request for costs of $35,545.46 is reduced to $17,772.73. The total award is $153,119.48.

CP at 1401-04.

### 1.1    Standard of review

We review de novo whether a contractual or statutory provision authorizes an award of attorney fees. *See Boguch v. Landover Corp.*, 153 Wn. App. 595, 615, 224 P.3d 795 (2009). Only if authorized by a contract, statute, or recognized ground in equity will attorney fees be awarded. *Bowles v. Dep't of Ret. Sys.*, 121 Wn.2d 52, 70, 847 P.2d 440 (1993). The contract entered into between Craig's Auto and Capstone allowed for attorney fees.

"We apply a two-part standard of review to a trial court's award or denial of attorney fees: (1) we review de novo whether there is a legal basis for awarding attorney fees by statute, under contract, or in equity and (2) we review a discretionary decision to award or deny attorney fees and the reasonableness of any attorney fees award for an abuse of discretion." *Falcon Props., LLC v. Bowfits 1308 LLC*, 16 Wn. App. 2d 1, 11, 478 P.3d 134 (2020). Trial judges have broad discretion in determining the reasonableness of an award. *Ethridge v. Hwang*, 105 Wn. App. 447, 460, 20 P.3d 958 (2001). However, "[t]he prevailing party should be awarded attorney fees only for the legal work completed on the portion of the claim permitting such an award, because while collateral claims may well be related to the contract claim and therefore conveniently tried together, they need not be resolved in order to decide the primary

claim. Allowing recovery of fees for actions which do not authorize attorney fees would also give the prevailing party an unfair and unbargained for benefit." *N. Coast Elec. Co. v. Selig*, 136 Wn. App. 636, 648, 151 P.3d 211 (2007).

### 1.2 Attorney fees under the contract and RCW 4.84.330

RCW 4.84.330 provides that in any action "on a contract" in which the contract allows a party to be awarded attorney fees and costs in a successful action to enforce the contract, the prevailing party, regardless of whether that party is the one specified in the contract as entitled to recover fees and costs, shall recover their reasonable attorney fees and costs. This statute makes unilateral fee provisions in a contract reciprocal and "ensures that no party will be deterred from bringing an action on a contract . . . for fear of triggering a one-sided fee provision. *Wachovia SBA Lending, Inc. v. Kraft*, 165 Wn.2d 481, 489, 200 P.3d 683 (2009). An action is "on a contract" if it arises out of the contract and the contract is central to the dispute. *Edmonds v. John L. Scott Real Est., Inc.*, 87 Wn. App. 834, 855, 942 P.2d 1072 (1997). Tort or quasi-contractual claims may qualify if they are integrally related to the contract, such as when the claim arises from the contract's performance or resolution of the claim depends on construing the contract. *See Brooks v. Nord*, 16 Wn. App. 2d 441, 452-53, 480 P.3d 1167 (2021). However, independent claims—those based on precontract conduct, extrinsic duties, or statutory

violations not requiring contract interpretation—do not trigger the statute. *See Boguch*,

153 Wn. App. at 619.

### 1.2.1 Breach of contract claim

The trial court determined that because Craig's Auto and Capstone both

"prevailed on substantial issues as to the breach of contract claim as evidence by the final

judgment on that claim," there was no prevailing party and an attorney fee award was

"not appropriate." CP at 1131. When both parties recover on major issues, a court may

find neither substantially prevails and decline to award fees to any party. *Marassi*, 71

Wn. App. at 916.

### 1.2.2 Negligence claim

Craig's Auto's alleged that Capstone negligently deviated from engineered design

standards, building code requirements, and accepted practices of contractors, resulting in

substandard work. Craig's Auto also claimed Capstone performed negligently in the

hiring or supervising of its subcontractors. Here, the negligence allegations directly relate

to Capstone's contractual obligations to reconstruct the building compliantly and

equivalently to the structure as it existed prior to the fire. Resolving this claim required

interpretation of the contract's performance standards and scope of work. Therefore,

it is "on the contract," and a trial court would properly award attorney fees under

RCW 4.84.330 for successfully defending against this claim.

### 1.2.3 Promissory estoppel claim

Craig's Auto claimed Capstone promised a defect-free building, a promise that

Craig's Auto relied on to its detriment. Application of the doctrine of promissory estoppel

is made in certain circumstances where consideration is lacking, but the enforcement of

the promise is appropriate because the party making the promise should reasonably

expect their promise to induce detrimental reliance on the part of the party to whom the

promise is made. *Hatfield v. Columbia Fed. Savs. Bank*, 57 Wn. App. 876, 885, 790 P.2d

1258 (1990). Washington courts have held that quasi-contractual actions, such as

quantum meruit or promissory estoppel, can be "on the contract" for fee purposes if they

seek to enforce promises integral to the contractual relationship. *See Herzog Aluminum,

Inc. v. Gen. Am. Window Corp.*, 39 Wn. App. 188, 197, 692 P.2d 867 (1984). Here, the

alleged promise mirrors the contract's commitments regarding building quality and

defect-free delivery. As an alternative theory to breach of contract, it arises out of the

contract and requires reference to its terms. A trial court would not err in awarding

attorney fees for defending against this claim.

### 1.2.4 Conversion claim

Craig's Auto's conversion claim alleged deprivation of personal property and fixtures under Capstone's control during reconstruction. Conversion is an intentional tort involving wrongful dominion over another's property. *See Top Line Equip. Co. v. Nat'l Auction Service, Inc.*, 32 Wn. App. 685, 689, 649 P.2d 165 (1982) Unlike the negligence and promissory estoppel claims, this allegation does not require interpreting the contract's performance terms; it concerns an independent duty not to interfere with Craig's Auto's chattels, extrinsic to the reconstruction agreement. *See Wash. State Bank v. Medalia Healthcare LLC*, 96 Wn. App. 547, 554, 984 P.2d 1041 (1999) (citing *Judkins v. Sadler-Mac Neil*, 61 Wn.2d 1, 3, 376 P.2d 837 (1962)). While the contract provided Capstone access to the site, the claim focuses on tortious conduct beyond contractual obligations. Mere factual overlap with the project is insufficient to render it "on the contract." *See Burns v. McClinton*, 135 Wn. App. 285, 310-11, 143 P.3d 630 (2006). It would be error for a trial court to award attorney fees in the successful defense of this claim because it is not on the contract.

### 1.2.5 CPA claim

Craig's Auto's CPA claim alleged Capstone's failure to install proper materials constituted unfair and deceptive acts under RCW 19.86.020. CPA claims are statutory

and require proof of (1) an unfair or deceptive act, (2) in trade or commerce, (3) impacting the public interest, (4) injury, and (5) causation. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986). While CPA claims may overlap with contract disputes in construction (e.g., deceptive practices affecting public interest), they are fundamentally independent and do not necessitate contract interpretation. Moreover, RCW 19.86.090 authorizes fees only to a prevailing claimant, not to a party successful in defending a CPA claim, unless the claim was frivolous—which the trial court here did not find. *See Sato v. Century 21 Ocean Shores Real Est.,* 101 Wn.2d 599, 603, 681 P.2d 242 (1984). Awarding attorney fees as allowed by the contract provision would improperly circumvent the statutory scheme. It would be error for a trial court to award attorney fees for defense of this claim.

### 1.3 Prevailing party

A trial court's determination on a "prevailing party" is a mixed question of law and fact that we review under an error of law standard. *Eagle Point Condo. Owners Ass'n v. Coy*, 102 Wn. App. 697, 706, 9 P.3d 898 (2000). Under RCW 4.84.330, "prevailing party" means the party in whose favor the court rendered final judgment. *Riss v. Angel*, 131 Wn.2d 612, 633, 934 P.2d 669 (1997). A defendant who successfully defends may be a prevailing party. *Marine Enters., Inc. v. Sec. Pac. Trading Corp.*, 50 Wn. App. 768,

772, 750 P.2d 1290 (1988). If neither party wholly prevails, then depending on the relief granted to the parties, the party that substantially prevails is the prevailing party. *Transpac Dev., Inc. v. Young Suk Oh*, 132 Wn. App. 212, 217-19, 130 P.3d 892 (2006). The substantially prevailing party need not prevail on their entire claim. *See Silverdale Hotel Assocs. v. Lomas & Nettleton Co.*, 36 Wn. App. 762, 774, 677 P.2d 773 (1984). When each party prevails on a major issue, there may be no prevailing party for attorney fee purposes. *Phillips Bldg. Co. v. An*, 81 Wn. App. 696, 702, 915 P.2d 1146 (1996).

Courts must look at the outcome of all the claims in the lawsuit, regardless of whether RCW 4.84.330 authorizes attorney fees for the claim. *Hertz v. Riebe*, 86 Wn. App. 102, 105, 936 P.2d 24 (1997).

This case presents a novel situation in which the trial court determined neither party was entitled to attorney fees on the breach of contract claims because both parties substantially prevailed on their respective claims, but then parsed out the other four claims Capstone successfully defended against to declare Capstone the prevailing party entitled to attorney fees. In both situations, the trial court cited the proportionality approach set forth in *Marassi*, where this court recognized the unfairness of designating the plaintiffs as the prevailing parties when they obtained an affirmative judgment but prevailed on only 2 of their 12 contract claims, and when the defendant successfully

40

defending against the remaining 10 claims. 71 Wn. App. at 916-17. We held in *Marassi* that "when the alleged contract breaches at issue consist of several distinct and severable claims, a proportionality approach is more appropriate." *Id*. at 917. "In such a case, the court awards fees to the plaintiff for the claims the plaintiff prevails on, awards fees to the defendant for the claims [they prevail[] on, and offsets the difference." *Eagle Point*, 102 Wn. App. at 711.

### 1.4    Segregation and inconsistency in application

Washington law requires segregation of fees between compensable and noncompensable claims unless they are inextricably intertwined, such as when they share a common core of facts and related legal theories, making segregation impractical. *Hume v. Am. Disposal Co.*, 124 Wn.2d 656, 672-73, 880 P.2d 988 (1994); *Bloor v. Fritz*, 143 Wn. App. 718, 747, 180 P.3d 805 (2008). When the trial court finds the claims to be so related that no reasonable segregation of successful and unsuccessful claims can be made, there need be no segregation of attorney fees. *Pannell v. Food Servs. of Am.*, 61 Wn. App. 418, 447-48, 810 P.2d 952 (1991). Here, the trial court concluded segregation was not possible due to the five asserted causes of action "arising from a single course of conduct and events," CP at 1404, the post-fire building reconstruction

project. Neither party challenges this conclusion or the finding that supports it. *See*

CP at 1403 (finding of fact 9).

However, the trial court's application of this determination was inconsistent.

By denying attorney fees for the breach of contract claim and counterclaim where neither

party was found to have been the prevailing party, but awarding Capstone fees for

successfully defending against the other four causes of action, the court effectively

segregated the prevailing party determination despite concluding segregation was

impossible. If the claims were truly inseparable, then the court should have assessed

prevailing party status holistically across all the causes of action. *See Transpac Dev.*, 132

Wn. App. at 219. Given the level of success each party had on their breach of contract

claim, and Capstone's complete success in defending against the other four causes of

action, a holistic approach might result in a determination of no party substantially

prevailing and no need for a proportional attorney fee award. *Marassi*, 71 Wn. App. at

916. This inconsistency constitutes an abuse of discretion. Moreover, even if there is an

intertwining of claims, the award of attorney fees and costs remains limited to claims

"on the contract." Fees associated with ineligible claims like conversion and CPA cannot

be bootstrapped into recoverability.

We reverse the attorney fee and costs award to Capstone and remand for the trial court to apply a consistent holistic prevailing party analysis to the intertwined claims that qualify under RCW 4.84.330 (breach of contract, negligence, and promissory estoppel) and to exclude fees for the conversion and CPA claims.

2.      *Craig's Auto conflated a judgment on the claims and an award of attorney fees*

On appeal, Craig's Auto argues that the judgment entered by the trial court in the amount of $14,310.19 ($14k), that is the net recovery on the dueling breach of contract claims, should be offset by the $153,119.48 ($153k) awarded to Capstone for its attorney fees and costs. Craig's Auto conflates judgment on the breach of contract claims and judgment on the award of attorney fees and costs.

Offsetting an award of damages on the underlying contract claims with attorney fees and costs awarded on the other four causes of action would constitute legal error for several reasons. The contract damages award of $14k to Craig's Auto arises from the resolution fashioned by the trial court on the substantive merits of the breach of contract claims. The attorney fees of $153k awarded to Capstone arose out of its successful defense of the remaining causes of action. There are distinct legal bases for these awards. Washington courts require segregation of attorney fees where claims are segregable (e.g., contract versus noncontract), as established in *Hume*, 124 Wn.2d at 672-73, and *Boguch*,

153 Wn. App. at 620. Offsetting would improperly commingle these awards, treating fees and costs as if they were a counterclaim or substantive damages on the contract, which they are not. Fees awarded under a contract provision, pursuant to RCW 4.84.330 or some other basis, are collateral to the merits of the claim or claims, and are not part of the damages calculation. The trial court's approach—entering the $14k damages award separately from the $153k fee award—avoids this error, preserving the integrity of each claim's outcome.

Craig's Auto's arguments on appeal requesting offsetting misapplies these principles.

It is noted that Craig's Auto chose to not follow the direction of the trial court and submit a judgment for entry for the $14,310.19 net award on the breach of contract claims. The award on the breach of contract claims is wholly different from the attorney fee and cost award, and those judgments should not be intermingled.

*ATTORNEY FEES AND COSTS ON APPEAL*

Both parties request attorney fees and costs on appeal. RAP 18.1 allows the award of attorney fees if authorized by applicable law. A contractual provision authorizing attorney fees is authority for granting fees incurred on appeal. *Leen v. Demopolis*, 62 Wn. App. 473, 485, 815 P.2d 269 (1991). The parties' contract and RCW 4.84.330 authorize

the award of attorney fees to the prevailing party on review. Because Craig's Auto has substantially prevailed on appeal, it is entitled to an award of reasonable attorney fees and expenses.

CONCLUSION

We affirm the trial court's mechanism to conclude this case. We reverse the trial court's award of attorney fees and costs to Capstone and remand for further proceedings on that issue. We award Craig's Auto its reasonable attorney fees and costs on appeal, subject to its compliance with RAP 18.1(c).

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

 

_____
Murphy, J.

WE CONCUR:

_____
Staab, A.C.J.

_____
Fearing, J.